**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 542, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL, and Business Agents Edward Piscatelli and A. L. Smith, Respondents.**

No. 12416.

United States Court of Appeals Third Circuit.

Argued April 1, 1958.

Decided May 28, 1958.

Duane Beeson, Washington, D. C.. (Jerome D. Fenton, Gen. Counsel, Step-

hen Leonard, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Fannie M. Boyls, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Charles A. Wolfe, Philadelphia, Pa. (Samuel Fessenden, Philadelphia, Pa., J. Albert Woll, Washington, D. C., Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., of counsel, on the brief), for Local 542, Internat. Union of Operating Engineers, AFL, and business agents Edward Piscatelli and A. L. Smith, respondents.

Before KALODNER and HASTIE, Circuit Judges, and LAYTON, District Judge.

HASTIE, Circuit Judge.

The National Labor Relations Board has found that the respondent labor union, Local 542, International Union of Operating Engineers, AFL, has violated Sections 8(b) (2) and 8(b) (1) (A) of the National Labor Relations Act, as amended, by causing or attempting to cause employers to discriminate unlawfully in dismissing or refusing to employ five workmen. The Board now asks us to enforce its corrective order bottomed on that finding of unfair labor practice.

The question is raised whether doing certain things, which the Board has found were done by Local 542, is a violation of the Act. We come immediately to grips with the basic problem by stating the Board's own theory of unfair labor practice in the cases of employees McElhill, MacDougall and Dombroski. As the Board states in its brief, "Local 542 caused [these] three * * * employees to be refused employment because they were not members of the particular branch of Local 542 which, pursuant to the internal rules of that union, had jurisdiction over the jobs they sought." The internal organization of Local 542 is hierarchal. The membership of this single local is subdivided into a "parent" group of senior craftsmen and several subordinate branches. The subordinate branches include a so-called apprentice group called Branch "A", and a Branch "B", which is not precisely defined here. McElhill held an "A" card; MacDougall was a "B" branch member and Dombroski was a member of the parent body. McElhill's difficulties occurred when his employer proposed to shift him from certain work upon which he was no longer needed to a more skilled job of operating a tugger hoist. The union took the position that this work, different from that which he had completed, was inappropriate for a member of the "A" group. Yielding to the union's representations and urgings the employer laid McElhill off. MacDougall sought a particular job on a hoist. But at the union's behest the employer refused to hire him because, under union classification, a "B" branch member was not eligible for that job. Instead, the employer hired someone in a different category referred by the union. The third workman, Dombroski, a member of the senior or "parent" group, sought to accept lower grade work as an oiler when his more skilled job terminated, but the union steward who exercised substantial control over hiring refused to accept him because his "book" did not cover such work.

Thus, the union prevented each of three workmen—all union members in good standing—from getting an available job because his union classification, whether too high or too low, did not correspond with the available work. There is no finding that this selective referral and hiring scheme is capriciously or fraudulently administered, or that the categories are sham or arbitrarily defined, or that men are unfairly classified or excluded from a class for which they qualify objectively. There is no showing that the scheme in intention or in effect establishes an unfairly favored class or disadvantaged class. However, the Board thought, and indeed said in its decision, that it is enough to constitute an unfair labor practice that the union was imposing upon its members and upon employers in hiring them a requirement of a definitive intra-union classification as a "condition precedent to accept-

ing certain types of work assignments." More particularly, the Board found that the union's conduct was illegal because it amounted to causing "discrimination" in employment which tended "to encourage membership" in the respondent union.[1] Our principal inquiry is whether that is a permissible conclusion.

The Board's touchstone is Radio Officers' Union v. N.L.R.B., 1954, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455. That opinion has given the Board very great latitude in deciding what amounts to discrimination in employment tending to encourage union membership. In analyzing the problem the court there pointed out that certain types of discrimination—in the actual Radio Officers' case, a wage differential between union and non-union employees—are " 'inherently conducive to increased union membership.' " 347 U.S. at page 46, 74 S.Ct. at page 338. But beyond such clear situations, the Court left a very broad and not precisely defined area in which union imposed restrictions upon employment may be proscribed as unfair labor practices. And finally, the Court interpreted "encouraging union membership" as a concept broad enough to include encouraging members of a union to do those things which keep one "in good standing with the union".

In National Labor Relations Board v. Philadelphia Iron Works, 3 Cir., 1954, 211 F.2d 937, this court applied those concepts to a refusal, at a union's insistence, to hire a union member because he had bypassed the union referral system and had obtained employment by direct dealing with the employer for which he could not have been selected under the union referral scheme. True, that controversy, different from this one, arose out of a contract between employer and union to hire only union members in good standing as referred by the union. But if, as the Board found in the pres-

ent case, the union has in fact required the employer to act in subservience to its referral scheme and internal regulations, it does not matter whether the means of coercion was a collective bargaining agreement or a demand unsupported by any bargain. We think, therefore, that consistency with our decision in National Labor Relations Board v. Philadelphia Iron Works, supra, requires that we sanction the present findings of unfair labor practices.

The case of a fourth employee, James Russell, discloses a different reason for union objection to his employment. On the Board's own analysis of the record, during the period preceding Russell's filing of a charge—the only period to which the complaint addresses itself—the union's sole objection to the employment of Russell on a job in Bethlehem was that Bethlehem men were unemployed when he sought work as an applicant from Philadelphia. Russell and all others concerned were fellow members of Local 542. But even this imposition of a rule of intra-union preference cannot be imposed upon an employer. This does not mean that the union may not administer referrals systematically in accordance with its own rules or that a referral system is in its nature improper. But a union may not insist that an employer subordinate his own hiring preference to the union's referral arrangement.

The final case of Harold Naugle stands on yet another basis. There was testimony, credited by the Board, that representatives of respondent Local 542 influenced and persuaded an employer to discharge Naugle because he was a member of another local and, beyond that, that the respondent caused his replacement by one of its members. Such conduct is too clear and too well recognized an unfair labor practice to require argu-

1. Section 8 (b) (2) makes it an unfair labor practice for a union "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3)." 29 U.S.C.A. § 158 (b) (2). And the cited subsection (a) (3) makes unlawful employer "discrimination in regard to hire * * * to encourage or discourage membership in any labor organization." 29 U.S.C.A. § 158 (a) (3).

mentative elaboration. The facts suffice to substantiate the charge of unfair labor practice in Naugle's case.

 We do not reach the merits of the union's objection to the reach of paragraph 2A(2) of the Board's order because no objection was made on this score before the Board. And no extraordinary circumstances are urged to warrant considering this issue for the first time at this late stage of litigation. National Labor Relations Board v. District 50, United Mine Workers of America, 1958, 355 U.S. 453, 78 S.Ct. 386, 2 L.Ed.2d 401.

All other points urged by the union, including challenges to the sufficiency of the evidence and to the impartiality of the trial examiner have been considered and are decided against the union.

A decree will be entered enforcing the order of the Board.