NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LOCAL UNION NO. 85, SHEET METAL
WORKERS' INTERNATIONAL ASSO-
CIATION, AFL–CIO, Respondent.

No. 17694.

United States Court of Appeals
Fifth Circuit.

Feb. 11, 1960.

Rosanna A. Blake, Atty., Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Stuart Rothman, Gen. Counsel, Christopher J. Hoey, Atty., N. L. R. B., Washington, D. C., for petitioner.

John S. Patton, Edwin M. Pearce, Poole, Pearce & Hall, Atlanta, Ga., for respondent.

Before RIVES, Chief Judge, and TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

R. C. Mahon Construction Company had a contract for the installation of equipment at the Ford Motor Company project at Hapeville, Georgia. Mahon employed sheet metal workers in its work. The job site was within the jurisdictional boundaries of the respondent, Local Union No. 85, Sheet Metal Workers' International Association, AFL–CIO. The field superintendent of Mahon, George A. Thompson, was a member of another local of the Sheet Metal Workers' Union. At Thompson's request the respondent Union sent to him a copy of the form of contract which it customarily used in its agreements with employers. An addendum to the contract form contained a provision that:

> "The employer agrees that none but Journeymen Sheet Metal Workers and registered Apprentices, with referral cards from the Local Union shall be employed * * *."

No written contract was ever executed between Mahon and the Union although the terms contained in the specimen

form were generally observed by Mahon. Wages were paid according to the union scale and none but union sheet metal workers were hired. New employees were procured from the Union through its business agent, J. L. Fleming, and, it appeared, none were or would be hired without a referral card from the Union.

J. P. Gasaway, a member of the Union, filed charges against the Union, but not against Mahon, charging violations of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. Gasaway testified that he applied to Thompson, Mahon's superintendent, for a job and was told he could be hired that day if the Union would give him a referral card. Gasaway applied to Fleming for a referral which Fleming refused. Fleming said, according to Gasaway, "I am not going to let them pick you." The refusal was reported by Gasaway to Thompson who said he would see what he could do. Gasaway again went to the union hall and was again refused a referral card by Fleming. Gasaway said he had seen a lawyer and quoted Fleming as replying, "I am your damn lawyer and I will tell you when to go to work and when not to." Gasaway did not go to work for Mahon. Fleming testified that he refused to give Gasaway a referral card because he (Fleming) "did not have no call in the office for nobody." He said it was too late to find out if Mahon wanted a man. He said that if Mahon wanted to hire Gasaway he could have been given a job, but did not know whether Mahon would hire anyone without a referral from the Union. Fleming said that he would have given Gasaway a referral card if Mahon had made an individual request for him but otherwise he would have been referred only if his name was at the top of the waiting list. At the time of the request, Gasaway's name was no higher than third, and perhaps fourth on the list. No non-union worker had ever asked Fleming for a referral card, so far as he could recall. Fleming and Thompson both denied that there was any agreement or understanding between Mahon and the Union that

Mahon would abide by the terms of the specimen contract. So far as Thompson could recall no non-union worker ever asked for a job on the Hapeville project. Thompson remembered that Gasaway had applied for a job and had been told that he would probably be hired if he was "cleared through the hall." Thompson testified that the specimen contract was requested in order that he might become familiar with the wage scale prevailing in the area. The Trial Examiner, however, was of the belief that the question of prevailing wages must have been explored before there was a bid on the job by Thompson's Company, and that Thompson was not completely frank in this testimony. The testimony of Fleming and Thompson convinced the Examiner that Mahon fully complied with the terms of the specimen contract and that there was an understanding between Mahon and the Union that there would be compliance with the contract provisions even though they might not have been legally binding. Fleming, for the Union, said that he had no occasion to complain of any violation by Mahon of the working rules of the Union and regarded it as a fair contractor.

The Board sustained the Examiner's findings. It concluded that the hiring hall was illegal as it was operated with respect to the Mahon job and that the Union had practiced illegal discrimination against Gasaway. The Board decided that the illegal hiring arrangement coerced employees into becoming and remaining members of the Union and paying dues and initiation fees to it. The Board ordered that the Union:

"1. Cease and desist from:

"(a) Entering into, performing, maintaining, or otherwise giving effect to any agreement, arrangement, or understanding with R. C. Mahon Construction Company, or any other employer over whom the Board will assert jurisdiction, which conditions the hiring of applicants for employment, or the retention of employees in their jobs, with such employer upon referral, clearance,

or approval by the Respondent, or which conditions employment upon membership in the Respondent, except as authorized by Section 8(a) (3) of the Act;

"(b) Causing or attempting to cause R. C. Mahon Construction Company or any other employer over whom the Board will assert jurisdiction, to discriminate against J. P. Gasaway, or any other employee or applicant for employment, in violation of Section 8(a) (3) of the Act;

"(c) In any other manner restraining or coercing employees in the exercise of their rights guaranteed in Section 7 of the Act, except to the extent that such rights may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized by Section 8(a) (3) of the Act.

"2. Take the following affirmative action, which the Board finds will effectuate the policies of the Act:

"(a) Make whole J. P. Gasaway for any loss of earnings he may have suffered because of the discrimination against him, in the manner set forth in the section of the Intermediate Report entitled 'The Remedy.'

"(b) Refund to all present and former employees of R. C. Mahon Construction Company any initiation fees, dues, assessments, or any other moneys they were illegally required to pay the Respondent Union in order to secure or retain employment with the said Company under the illegal hiring arrangement between the Respondent Union and the Company during the period beginning 6 months before the filing and service upon the Respondent Union of the charge in this proceeding;

"(c) Notify R. C. Mahon Construction Company and J. P. Gasa-

way, in writing, that it has no objection to Gasaway's employment."

Other provisions of the Order directed the Union to post a notice in conspicuous places with notification of the Board's Regional Director as to compliance with the Order. The Board has petitioned for the enforcement of its Order.

■ The evidence here sustains the Board's determination that there was illegal discrimination against Gasaway. It would be difficult to avoid reaching the conclusion that there was an agreement, either explicit or tacit, between the Union and Mahon that none should be hired except those who had referral slips from the Union and that only members of the Union would be referred. The evidence sustained the conclusion that Gasaway would have been employed by Mahon but for the refusal of the Union to give him the referral slip. This refusal was discrimination tending "to encourage union membership" and it is immaterial that Gasaway was a union member. National Labor Relations Board v. Philadelphia Iron Works, 3 Cir., 1954, 211 F.2d 937; National Labor Relations Board v. Local 542, 3 Cir., 1958, 255 F.2d 703; National Labor Relations Board v. Daboll, 9 Cir., 1954, 216 F.2d 143. See Radio Officers' Union, etc. v. National Labor Relations Board, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455.

■ We think there is an absence of support in the record for the Board's requirement that the Union refund to Mahon's employees any initiation fees, dues and assessments "they were illegally required to pay the Respondent Union in order to secure or retain employment with the said Company under the illegal hiring arrangement between the Respondent Union and the Company during the period beginning 6 months before the filing and service upon the Respondent Union of the charge in this proceeding." It cannot be said, we think, that there is evidence to show that any of the members of the Union would have declined to pay dues and surrendered their Union membership if

Union membership had not been necessary in the procuring of employment with Mahon. Gasaway had been a member of the Union for five years and was a member at the time of the trial. To say, as we have said, that there was a discrimination tending "to encourage union membership" is not to say that the union members on the job became members or retained their membership in the Union in order to secure or retain employment with Mahon. In the absence of some proof that dues would not have been paid but for the requirement, the Board's reimbursement Order becomes punitive rather than compensatory. As a punitive measure the refund provisions of the Order should not be enforced. Republic Steel Corporation v. National Labor Relations Board, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6. The provision of the notice relative to refunds should be deleted.

Except as to those provisions relating to the refund of initiation fees, dues, etc., the Board's Order will be enforced.

Enforced in part.