275 F.2d 909
 BUILDING MATERIAL TEAMSTERS, LOCAL 282, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
CRAWFORD CLOTHES, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 107-108.
 Dockets 25608-25614.
 United States Court of Appeals Second Circuit.
 Argued January 5, 1960.
 Decided March 2, 1960.
 
 Jack Last, New York City (Stanley B. Blumberg and Cohen and Weiss, New York City, on the brief), for petitioner Local 282, Internatl. Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.
 Abbie Goldstein, New York City (Hyman Fried, New York City, on the brief), for petitioner Crawford Clothes, Inc.
 Frederick U. Reel, Washington, D. C. (Stuart Rothman, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Ass't Gen. Counsel, and Morton Namrow, Washington, D. C., on the brief), for respondent.
 Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.
 FRIENDLY, Circuit Judge.
 
 
 1
 Crawford Clothes, Inc., a manufacturer, and Building Material Teamsters, Local 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, hereafter referred to as Local 282, have petitioned for review of an order of the National Labor Relations Board finding them guilty of unfair labor practices. The Board has answered, seeking enforcement of its order.
 
 
 2
 Crawford Clothes is a New York corporation, having its principal office and place of business in Long Island City and being engaged, there and elsewhere, in the manufacture and interstate sale and distribution of clothing. In 1946 Local 282 was designated as the collective bargaining representative of Crawford's drivers and helpers at the Long Island City plant. At the time of the proceedings before the National Labor Relations Board the most recent collective bargaining agreement between Crawford and Local 282 was one effective from September 1, 1956 to August 31, 1958.
 
 
 3
 The origin of the proceedings was a charge filed against Crawford and Local 282 on November 1, 1957, by Robert Cross. Cross had entered Crawford's employ in 1936, as a helper on a truck. He later became a driver. Save for duty in the armed services during World War II and a two-months' layoff for reduction in force, he was continuously employed from 1936 until May 10, 1957, when he was again laid off in a reduction of force. His charge was that Crawford had laid him off as a driver at the request of Local 282 although he "was entitled to bump one of the helpers who had less seniority" and had refused to call him back to work although it had work for him. Cross had long been a member of Local 282.
 
 
 4
 In the course of its investigation of Cross' charge, the Board looked into the collective bargaining agreement. It found that § 5 contained the provisions set forth in the margin,[1] and that § 9 provided as follows:
 
 
 5
 "Employers shall hire only union loaders when available, and not less than three men must help the chauffeur or driver to load his trucks or automobile. This provision shall not apply to the unloading of trucks or equipment."
 
 
 6
 General Counsel on behalf of the Board issued an "Order Consolidating Cases, Complaint and Notice of Hearing." The complaint alleged that the quoted provisions of the collective bargaining agreement constituted an unfair labor practice by Crawford within § 8(a) (1) and (3) and by the Local within § 8(b) (1) (A) and (2) of the National Labor Relations Act, 29 U.S.C.A. § 158. It alleged also that Crawford and Local 282 had an understanding giving the Local control over the seniority ranking of Crawford's employees, that Crawford discharged Cross and refused to reinstate him because of such understanding, and that this was a further unfair labor practice by Crawford and the Local.
 
 
 7
 At the hearing Crawford and the Local moved to dismiss so much of the complaint as concerned the alleged illegality of the collective bargaining agreement. They contended this claim was not related to Cross' charge and hence could not be entertained by the Board consistently with § 10(b) of the National Labor Relations Act, 29 U.S.C.A. § 160(b), which empowers the Board only to issue "a complaint stating the charges in that respect." The trial examiner denied the motion. All the testimony at the hearing related to seniority and the alleged improper discharge of Cross.
 
 
 8
 At the time of Cross' discharge the unit represented by Local 282 consisted of three drivers and three helpers. The examiner found that there had been separate seniority lists of drivers and helpers at least since 1946 and that Cross' seniority was the lowest of the three drivers although superior to all three of the helpers. He also found there was "not a scintilla of evidence in the record that in 1946 or thereafter Respondent Crawford granted Respondent Teamsters an across-the-board delegation with power to dominate absolutely the matter of seniority, without any standards and in all circumstances." He therefore concluded that the case did not fall within the doctrine, enunciated in Pacific Inter-mountain Express, 107 N.L.R.B. 837 (1954) that a grant by an employer to a union of the power to settle any controversy over seniority standing violated the Act because it tended to encourage union membership. The examiner found the contract provisions requiring union membership in violation of § 8(a) (1) and (3) and 8(b) (1) (A) and (2) of the Act since they did not explicitly provide for the 30-day waiting period specified in § 8(a) (3) and the purported saving clauses in § 5 of the contract did not cure the illegality, citing on the latter point our decision in Red Star Express Lines of Auburn Inc. v. N. L. R. B., 2 Cir., 1952, 196 F.2d 78. He recommended an order prohibiting Crawford and the Local from renewing, enforcing, or implementing the clauses of any agreement requiring employees to maintain union membership as a condition of employment except in conformity with the Act, and the posting of notices to that effect.
 
 
 9
 The General Counsel filed exceptions relating to the examiner's failure to find an unfair labor practice in Cross' discharge and the alleged arrangement giving the Union control of seniority ranking; he took no exception to the examiner's failure to recommend a more drastic remedy with respect to the contract clauses. Crawford and the Local filed no exceptions. The General Counsel submitted a brief in support of his exceptions. Crawford and the Local filed briefs in reply thereto and in support of the examiner's report. There was no oral argument.
 
 
 10
 The Board, although disagreeing with certain of the examiner's findings as to seniority lists, upheld his conclusion that Crawford and the Local had not violated § 8 of the Act in the discharge of Cross, holding that the General Counsel had failed to sustain his burden of proving an unlawful agreement giving the Local control over the seniority of Crawford's employees. The Board also approved the examiner's conclusion as to the illegality of the quoted provisions of the collective bargaining agreement. For this it added a new and more drastic remedy, thereby creating the primary issue on these petitions for review. Stating that "The record shows that by the unlawful provisions of the contract involved herein, the Respondents have unlawfully encouraged employees to join the Respondent Union in order to obtain or maintain employment, thereby inevitably coercing them into the payment of initiation fees, union dues and other sums," the Board said that "In order adequately to remedy the unfair labor practices found, the Respondents should be required to reimburse employees of the Company for any initiation fees or dues, and other moneys, which have been unlawfully exacted from them as the price of their employment" It ordered Crawford and the Local "jointly and severally, to refund to the drivers and drivers' helpers of the Respondent Company all initiation fees, dues and other monies paid by them to the Union as the price of their employment" for a period beginning six months prior to the date of the filing and service of Cross' charge.
 
 
 11
 In Morrison-Knudsen Co. v. N. L. R. B., 2 Cir., 275 F.2d 914, we struck out a provision in an order requiring similar reimbursement by an employer, as the Third Circuit has recently done in N. L. R. B. v. American Dredging Co., 276 F. 2d 286. The principles there stated require us here to strike out the reimbursement provision not only as to the employer but also as to the union.
 
 
 12
 We assume that, as held in Red Star Express Lines of Auburn v. N. L. R. B., 2 Cir., 1952, 196 F.2d 78; N. L. R. B. v. Gaynor News Co., 2 Cir., 1952, 197 F.2d 719, affirmed sub nom., Radio Officers' Union v. N. L. R. B., 1954, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455, and N. L. R. B. v. Gottfried Baking Co., 2 Cir., 1954, 210 F.2d 772, and despite Lewis v. Quality Coal Co., 7 Cir., 1959, 270 F.2d 140, certiorari denied, 80 S.Ct. 369, 4 L.Ed.2d 353, omission of the 30-day waiting period clause required by § 8(a) (3) was not cured by the provision making union membership a condition to hiring or retention only "in the event that this is not in conflict with the law" and that this alone sufficed to justify an order requiring rectification. We recognize also that requiring reimbursement by the union is less oppressive than demanding it of the employer, since the union has at least received the dues — although it has also rendered the services for which the dues were paid. However, there is not a syllable of evidence that in this case the omission of the 30-day clause in fact had any coercive effect. Cross and the two drivers senior to him had been in Crawford's employ for ten years before the Union was designated as bargaining representative in 1946, the record is silent as to when or under what circumstances the three helpers joined, and there is no suggestion that anyone would have acted one whit differently if the 1956 agreement had contained the prescribed 30-day clause. The Board's statement that "The record shows that by the unlawful provisions of the contract involved herein, the Respondents have unlawfully encouraged employees to join the Respondent Union in order to obtain or maintain employment, thereby inevitably coercing them into the payment of initiation fees, union dues and other sums" is factually unsupported unless read in a highly legalistic way and not, even then, with respect to the statement on coercion; the "record" shows nothing on the entire subject other than the contract itself. So far as appears, all the employees willingly joined and remained members of the union; no one would be more surprised than they at receiving a refund of their dues since May, 1957, a date six months before Cross filed his "charge" claiming a different unfair labor practice which the Board found not proved.
 
 
 13
 This is one of a series of cases, starting with the so-called Brown-Olds decision, 115 N.L.R.B. 594 (1956), in which the Board has been imposing reimbursement of dues as a remedy for certain unfair labor practices, more or less routinely and with regular incantation of the same words here recited. In addition to the Morrison-Knudsen and American Dredging cases above cited, where an order directing reimbursement by an employer was invalidated, cases directing reimbursement by unions have been reaching the Courts of Appeals. In N. L. R. B. v. Local 60, United Brotherhood of Carpenters, the 7th Circuit, 273 F.2d 699, sustained such an order; however there was some evidence in that case that the contract had prevented the employment of non-members. The Court of Appeals for the District of Columbia Circuit declined to apply that decision in Local 357, International Brotherhood of Teamsters, etc. v. N. L. R. B., D.C.Cir., 275 F.2d 646, and excised the reimbursement remedy save for the particular victim of the unfair practice. In Morrison-Knudsen Company, Inc. v. N. L. R. B., 9 Cir., 276 F.2d 63, the Court struck the reimbursement provisions with respect to both employer and union save as to five persons in whose case there was a showing of actual discrimination; and in N. L. R. B. v. Local Union 85, Sheet Metal Workers International Association, 274 F.2d 344, the Fifth Circuit declined to enforce a reimbursement order even as to a single union member concerning whom unlawful discrimination was recognized to have been practiced. We said in N. L. R. B. v. Adhesive Products Corp., 2 Cir., 1958, 258 F.2d 403, 409, that "the validity of reimbursement orders necessarily depends upon the peculiar circumstances of each particular case," and the Supreme Court indicated in N. L. R. B. v. Seven-Up Bottling Co., 1953, 344 U.S. 344, 349, 73 S.Ct. 287, 290, 97 L.Ed. 377, that the Board was not free to "apply a remedy it has worked out on the basis of its experience, without regard to circumstances which may make its application to a particular situation oppressive and therefore not calculated to effectuate a policy of the Act." To us that aptly describes what the Board's addition of a reimbursement provision has done here.
 
 
 14
 Because of this holding, it is unnecessary to consider petitioners' attacks on the reimbursement order on the score that since no exception was filed to the examiner's failure to recommend reimbursement, alteration of his order in that respect by the Board was precluded by the last sentence of § 10(c) of the National Labor Relations Act, providing that if no exceptions are filed to a recommended order, "such recommended order shall become the order of the Board," as amplified in § 102.48 of the Board's rules, but see N. L. R. B. v. Townsend, 9 Cir., 1950, 185 F.2d 378, 384 certiorari denied 1951, 341 U.S. 909, 71 S.Ct. 621, 95 L.Ed. 1346, and that in any event such alteration was precluded by § 102.46(b) of the Board's rules providing that "no matter not included in a statement of exceptions may thereafter be urged before the Board, or in any further proceeding."
 
 
 15
 While the attacks made by petitioners in brief and oral argument related primarily to the reimbursement provision, the petitions for review request us to set aside the Board's order to the full extent that it finds petitioners have "engaged in unfair labor practices and provides affirmative remedial action." The ground particularly urged for this broader relief is that the contract provisions limiting employment to union members, which the Board found unlawful, were not sufficiently related to the charge of union control over seniority lists made by Cross — the Board, unlike many other Federal regulatory agencies, being limited by § 10(b) of the Act to the prosecution of violations brought to its attention by aggrieved parties,[2] a provision which has been construed to include other violations only if these are "closely related." N. L. R. B. v. Dinion Coil Co., 2 Cir., 1952, 201 F.2d 484; N. L. R. B. v. Fant Milling Co., 1959, 360 U.S. 301, 307-309, 79 S.Ct. 1179, 3 L.Ed.2d 1243. Although petitioners moved at the hearing to eliminate the portion of the complaint relating to the contract, the examiner denied the motion and petitioners did not except to the examiner's intermediate report which found them guilty of an unfair labor practice in this regard and recommended limited affirmative relief. Section 102.46(b) of the Board's rules, quoted in our statement of petitioners' contentions in the preceding paragraph, precludes attack by them on findings and recommendations of the examiner to which they did not except.
 
 
 16
 The petitions for review are granted to the extent that the Board's order is modified by striking out paragraph III providing for reimbursement; the order of the Board as so modified will be enforced.
 
 
 
 Notes:
 
 
 [1]
 "The Employer agrees to a Union Shop. Election for same shall be conducted under the supervision of the N. L. R. B
 "The superintendent or man in charge shall immediately, upon employment, notify the Job Steward or the Union if there is no Job Steward, of the employment of any man who, under this agreement, is required to be a member of the Union. Upon notice from the Union that any employee who has been employed for more than thirty (30) days has failed to tender the periodic dues and initiation fees uniformly required as a condition of acquiring and retaining membership, the employer agrees to discharge such employees within seven (7) days after the receipt of a written notice from a properly authorized official of the Union.
 "The foregoing paragraphs of this section shall be subject to the Union's right to require only members in good standing to be retained in employment and to be hired to fill vacancies in the event that this is not in conflict with the law at any time during the term of this agreement.
 "In the event of any change in the law during the term of this agreement the Employer agrees that the Union will be entitled to receive the maximum union security which may be lawfully permissible."
 
 
 [2]
 The original Wagner Bill as introduced in the Senate (S. No. 1958, 74th Cong. 1st Sess.) provided as follows in the equivalent of present § 10(b): "Whenever there is a charge or the Board shall have reason to believe * * *" There was no specific reference to this provision in the Committee Report, but there was the general comment that the enforcement procedures were similar to those provided by the Federal Trade Commission Act, which gave the Commission the power to institute proceedings "whenever the Commission shall have reason to believe" that a violation has occurred. 15 U.S.C.A. § 45(b). However, in the course of the floor debate a series of Committee amendments were reported and accepted, one of which changed § 10 (c) to its present language, "whenever it is charged that * * *" 79 Cong. Rec. 7651 (1935)
 This provision contrasts not only with the Federal Trade Commission Act but with other Federal regulatory laws. The Interstate Commerce Act, 49 U.S.C.A. § 12(1), authorizes interested persons to file complaints about the actions of carriers, but § 13(2) provides that the "Commission shall have the same powers and authority to proceed with any inquiry instituted on its motion as though it had been appealed to by complaint * * *" The Federal Communications Act is similar; 47 U.S.C.A. § 208 authorizes complaints by private persons, and 47 U.S. C.A. § 403 accords the Commission a sua sponte power of equal scope. The provisions of the Federal Aviation Act, 49 U.S.C.A. § 1482(a) and (b), also correspond to § 13(2) of the Interstate Commerce Act; the Civil Aeronautics Board may receive complaints or institute actions on its own motion.