### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### LOCAL 542, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, International Union of Operating Engineers, AFL–CIO, Hunter P. Wharton, Secretary-Treasurer, William McAneny, Agent.

#### No. 14426.

United States Court of Appeals Third Circuit.

Argued Nov. 6, 1963.

Decided March 10, 1964.

Arthur Goldberg, Atty., N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin Pollack, Atty., N. L. R. B., on the brief), for petitioner.

Thomas N. O'Neill, Jr., Philadelphia, Pa. (Charles A. Wolfe, Montgomery, Mc-Cracken, Walker & Rhoads, Philadelphia, Pa., Gerard F. Treanor, Washington, D. C., on the brief), for respondents International Union of Operating Engineers, AFL-CIO, Hunter P. Wharton and William McAneny.

Abraham E. Freedman, Philadelphia, Pa. (Martin J. Vigderman, Wilfred F. Lorry, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for respondent Local 542, International Union of Operating Engineers, AFL-CIO.

Before STALEY, HASTIE and SMITH, Circuit Judges.

HASTIE, Circuit Judge.

In this case the National Labor Relations Board has found the International Union of Operating Engineers, certain of its officers and agents, and Engineers' Local 542 guilty of unfair labor practices. The wrongs alleged were discriminatory refusals to refer certain union members to a contractor for employment and the inclusion and maintenance of unlawful closed-shop provisions in a collective bargaining contract. On this petition for enforcement of the Board's order, the principal matter in dispute is the Board's requirement that all of the respondents make whole three members of Local 542, Olin Watkins, Francis McCabe and Joseph Paskert, for earnings lost because of illegal denials of referrals. The local union and the parent international union have been repesented by separate counsel and have taken different positions throughout this controversy.

The evidence before the Board was adequate to establish that the respondent William McAneny, acting as business agent for Local 542, unlawfully refused to refer each of the three workmen for employment because of the applicant's activity in factional dispute within the union. It is also clear and not disputed that the wrongs occurred while the local was under a trusteeship imposed by the International, with respondent McAneny functioning as business agent under the control of a trustee appointed by the International President to conduct the affairs of the Local. Although the present complaint was filed after the termination of the trusteeship, at the times in question the membership of the Local had no control over McAneny's conduct. A principal question on this petition is whether under these circumstances the International or the Local, or both, may be required to compensate the injured employees.

It is not seriously disputed that, under accepted principles of respondeat superior, the International is responsible for the wrongful acts of McAneny. However, the International argues that it should not be required to compensate one of the wronged employees, Olin Watkins, because he filed no charges against the International, complaining only that the Local had wronged him. The other two employees filed charges against both unions. In these circumstances, the General Counsel filed a complaint with the Board asking for relief for all three charging parties against both unions.

At the hearing it appeared that McAneny's refusals to refer the charging parties occurred at different times and under different circumstances. Because Watkins had filed no charge against the International, counsel for the International neither examined nor cross-examined any witness concerning the Watkins matter, although the other parties inquired fully into this episode. The Board then ordered both unions to compensate Watkins for loss of pay.

These circumstances create a problem under the provision of section 10(b) of the National Labor Relations Act, 29 U.S.C.A. § 160(b), that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made * * *."

The Board argues that the inclusion of the Watkins matter in the complaint and subsequent order against the International is permissible under our ruling in NLRB v. Midwest Transfer Co., 3 Cir. 1961, 287 F.2d 443. However, in the Midwest case, the respondent employer at the insistence of the respondent union had demanded that all members of a group of transferred employees join the union forthwith, and then had dismissed those who refused to do so. All of the wronged employees filed charges against the employer, but two did not charge the union. Similarly, the complaint failed to assert that the union had wronged those two. However, the Board required the union as well as the employer to make all of the employees whole. We enforced the order, viewing the union's unlawful demand that all employees join the union or be dismissed as a single unfair labor practice which was the gravamen of charge and complaint against the union and was fully litigated.[1] Therefore, an award of back pay to all members of the injured class, running against the union as well as the employer, was within the Board's discretion in fashion-

1. Company representatives and union leaders conferred and agreed that a deadline for transfer of union membership by the entire class of reassigned employees should be set. At the suggestion of the company representative, the local president then drafted a general notice to all employees that they must switch unions or lose their jobs. He also addressed the assembled union members to the same effect. No particular members were singled out for special treatment; the notice was a general one applicable to all transferred employees. Thus, the particular wrongdoing with which the union was charged resulted in injury to all of the employees who were awarded back pay.

ing a suitable remedy. It is to be observed that this case involved no variance between charge and complaint.

■ Here, in contrast, though the wrongs were similar, the employees involved were denied referrals on separate occasions in different circumstances. The refusal to refer Watkins was a distinct unfair labor practice concerning which no charge was ever filed against or served upon the International. Thus, no complaint based upon the Watkins episode could be issued against the International without violating the explicit prohibition of section 10(b). Similarly, the remedy could not include an award against the International for a wrong with which it had not been charged. We conclude, therefore, that so much of the Board's order as required the International to make Watkins whole is not enforceable.

We consider next whether the Local may be required to compensate its members who were deprived of employment by McAneny's misconduct. It is true that during trusteeship the Local continued to exist and may have incurred obligations and liabilities to third persons which remained enforceable against it after the termination of the trusteeship. And the membership may have so authorized or participated in action during trusteeship as to create Local liability regardless of the trusteeship. E. g., International Brotherhood of Teamsters and Local Union No. 294, 1957, 117 N.L.R.B. 1401; General Drivers, Local 968, 1954, 109 N.L.R.B. 275. But we are dealing here with mistreatment of members of the Local by the trustee's representative which the Local membership did not sanction and could not control. Indeed, at election of local officers held as soon as practicable after the termination of trusteeship, the membership elected Paskert, one of the present charging parties, to succeed McAneny as business agent. Moreover, Section 3 of Article VI of the International Constitution under which the International President gave his representative full control over the Local pro-

vided that during such "International supervision, all rights and powers of the Local Union to conduct its own affairs shall be suspended." Thus, in such a matter as we have here, McAneny functioned as master of the local rather than as its servant. In other situations, he might have elected to do the bidding of the membership, but on the record this is simply not such a case.

■ In these circumstances, we think it is inequitable and cannot further the purposes of the National Labor Relations Act to impose liability, primary or secondary, upon the Local to compensate its members for wrongs done during trusteeship by an official imposed upon the Local who acted without membership approval and was not subject to membership control.

In refusing to sanction even secondary liability here, we point out that this case is not like NLRB v. Lexington Electric Products Co., 3d Cir. 1960, 283 F.2d 54, where we held an employer secondarily liable for an unfair labor practice unwillingly committed by it in response to very strong union pressure. The employer there had both the power and the legal duty to refrain from wrongful conduct, however great the pressure the union may have exerted. As the responsible actor it could not escape liability, though as a matter of equity we concluded that the union's liability should be primary, with the employer only secondarily liable. In the present case, in contrast, the local simply had no power during trusteeship to prevent McAneny from discriminating against the charging parties.

■■ The International and its officers also object to the scope of the Board's order, which included a prohibition against similar misconduct against any other applicants for employment with the employer involved in this case or with any other employer. To justify so comprehensive a restraint of similar violations affecting strangers to the litigation it must appear "that danger of their commission in the future is to be anticipated from the course of * * * con-

duct in the past." NLRB v. Express Publishing Co., 1941, 312 U.S. 426, 437, 61 S.Ct. 693, 700, 85 L.Ed. 930. We have sustained orders of this kind where the record has provided a reasonable basis for such apprehension. NLRB v. Highway Truckdrivers and Helpers, Local No. 107, etc., 3 Cir. 1962, 300 F.2d 317; NLRB v. Local Union 522, Lumber Drivers, etc., 3 Cir. 1961, 294 F.2d 811. In its present decision, the Board stated that "a broad order" was necessary "because of Respondents' demonstrated disregard of the Act by a record of similar violations in the past", citing two earlier adjudicated violations involving other employees and other employers during the course of this very trusteeship. NLRB v. United States Steel Corp., 3d Cir. 1960, 278 F.2d 896, enforcing 122 N.L.R.B. 1324; NLRB v. Local 542, 3d Cir. 1958, 255 F.2d 703, enforcing 117 N.L.R.B. 1863. It is also true that this case itself involves discrimination against three different employees on separate occasions. We are satisfied that the Board's injunction is not unreasonably broad.

Finally, what we have said so far concerns only the refusals to refer applicants for work. The Board also restrained the enforcement of an agreement involving an illegal closed-shop arrangement. So much of the Board's order as relates to this matter is enforceable against the Local as well as the International. For it appears that the Local explicitly stated after the termination of trusteeship that this agreement should continue in full force.

The Board's order, modified as required by this opinion, will be enforced.

STALEY, Circuit Judge (dissenting in part).

I agree with the majority that the back pay award of the Board is enforceable against the International but not against the Local union. However, I dissent from the view that the Board erred in including Watkins in that award. As the majority states, the refusals to refer the charging parties occurred at different times and under different circumstances. But the record clearly shows that the refusal to refer Watkins was part of the single course of discriminatory conduct constituting the unfair labor practice. Watkins, Paskert, and McCabe were leaders of an anti-McAneny faction within the union, and it was because of their activity in that regard that McAneny refused to refer them for employment. In these circumstances, the holding of this court in NLRB v. Midwest Transfer Co. of Illinois, 287 F.2d 443 at 446 (C.A.3, 1961), is particularly appropriate:

> " * * * With the wrong thus specified, the membership of the injured class was well defined and peculiarly within the knowledge of the union. When the trial examiner recommended that liability be imposed on the union to reimburse all seven of the discharged employees, the union was put on notice to challenge the propriety of such recommended relief before the Board and to assert any defense it had in the case of any of the seven. It failed to take such action. This, therefore, is an especially appropriate case for following the decisions in this and other circuits which have enforced orders awarding reinstatement and back pay to employees *not named in a complaint* but found to have been victims of unfair labor practices described in the complaint and proved before the Board. (Citing cases.)" (Emphasis supplied.)

Moreover, in Midwest Transfer we enforced the order of the Board though the union was not named in the charges filed by two of the seven discriminatees, and the complaint of the General Counsel for the Board failed to name them as victims of the union's unfair coercion. Here, though the International was not named in Watkins' charge, it was included in the consolidated complaint of the General Counsel. Thus, the International was put on notice at every stage in the proceedings before the Board that it would be deemed responsible for the Wat-

kins incident as a part of the single course of conduct alleged as an unfair labor practice. In this setting, to hold that Watkins was improperly included in the order is to overrule our decision in Midwest Transfer. The holding of the majority unduly restricts the power of the Board to issue remedial orders in cases where the unfair labor practices result from a single course of conduct involving multiple discriminatees.