337 F.2d 205
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
The H. K. FERGUSON COMPANY, the Tuscaloosa and Vicinity District Council of Tuscaloosa and Selma, Alabama, and Carpenters and Millwrights Local Union No. 1337, Respondents.
 No. 20281.
 United States Court of Appeals Fifth Circuit.
 October 2, 1964.
 
 Marcel Mallet-Prevost, Asst. Gen. Counsel, Domonick L. Manoli, Associate Gen. Counsel, Arnold Ordman, Gen. Counsel, Allison Brown, Jr., Margaret M. Farmer, Attys., N. L. R. B., Washington, D. C., for petitioner.
 C. Paul Barker, New Orleans, La., Thomas J. McDermott, Cleveland, Ohio, Francis X. Ward, Washington, D. C., Dodd, Hirsch, Barker & Meunier, New Orleans, La., William A. McGowan, Washington, D. C., of counsel, for respondents.
 
 
 1
 Before BROWN and WISDOM, Circuit Judges, and JOHNSON, District Judge.
 
 JOHNSON, District Judge:
 
 2
 This is a petition filed by the National Labor Relations Board for the enforcement of an order issued against respondents following proceedings under § 10(e) of the Act.[1]
 
 
 3
 In the proceedings that culminated in the order the Board now seeks to have this Court enforce, it was found by the Board that the hiring practices maintained by the H. K. Ferguson Company, the District Council, and Local 1337, in the enforcement and administration of a master agreement, were in violation of the Act in that, as a result of absolute control over the hiring of millwrights that had been given to business agent Goodman, these practices resulted in the establishment of closed shop conditions at the Demopolis, Alabama, project where the company, an Ohio corporation, was engaging in construction and related work and was building a paper mill for the Gulf States Paper Corporation. The Board concluded that by maintaining and enforcing these unlawful practices the District Council and Local Union 1337 violated § 8(b) (1) (A) and 8(b) (2), and the Ferguson Company violated § 8(a) (1) and (3) of the Act.[2]
 
 
 4
 The Board also found that eight named employees were discriminatorily denied employment in the implementation of the closed shop practices that were found to exist and, further, that by agent Goodman's discriminatory denial of referrals and the company's acquiescence in Goodman's actions, the District Council and Local 1337 violated § 8(b) (1) (A) and 8(b) (2) of the Act, and the Ferguson Company violated § 8(a) (1) and (3) of the Act.
 
 
 5
 The Board's order requires the company to cease and desist from maintaining, enforcing or giving effect to any arrangement or practice with the District Council or Local 1337, or any other labor organization which required membership as a condition of employment; from encouraging membership in Local 1337 or any other labor organization by discriminating with respect to hiring or tenure or any other term or condition of employment, and from, in any other manner, interfering with employees in the exercise of their rights as guaranteed in § 7 of the Act. With respect to the District Council and Local 1337, the Board's order requires that each cease and desist from maintaining, enforcing or giving effect to any arrangement or practice with the company or any other employer which requires membership in it or any of its affiliated organizations as a condition of referral for employment; from causing or attempting to cause the company or any other employer to discriminate against the employees or applicants for employment in violation of the Act and from, in any other manner, restraining or coercing employees or applicants for employment in the exercise of rights guaranteed in § 7 of the Act. The Board's order also requires each of the respondents, jointly and severally, to reimburse the eight named employees for any loss they may have suffered as a result of the discrimination against them and to reimburse all nonmember millwrights and millwright apprentices who worked at the Demopolis project for monies illegally extracted from them by way of fees or "dobies," required as a condition to issuing referrals to the Demopolis job to applicants who did not have membership in the Demopolis local or Local 1337 in Tuscaloosa, Alabama.
 
 The questions presented to this Court are:
 
 6
 (1) Whether substantial evidence on the record as a whole supports the finding of the Board that the company, in violation of § 8(a) (1) and (3) of the Act, and the District Council and Local Union 1337, in violation of § 8 (b) (1) (a) and 8(b) (2), maintained and enforced hiring practices at the Demopolis, Alabama, project which created closed shop conditions.
 
 
 7
 (2) Whether substantial evidence on the record as a whole supports the finding of the Board that the company, in violation of § 8(a) (1) and (3) of the Act, discriminatorily refused to employ, and the District Council and Local Union 1337, in violation of § 8 (b) (1) (A) and 8(b) (2), discriminatorily refused to refer for employment certain named employees in the implementation of unlawful closed shop practices and for reasons connected with their union membership. ship.
 
 
 8
 (3) Whether the Board's order that is sought to be enforced is otherwise valid and proper.
 
 
 9
 The facts as reflected by our study of the record in this case are, generally, as follows: About November 23, 1956, the millwrights on the Demopolis, Alabama, project became dissatisfied with their wages and walked off the job. Prior to this the Ferguson Company and the respondent unions had entered into a master contract that provided that the United Brotherhood of Carpenters and Joiners, the parent body of the District Council and Local 1337, would furnish competent journeymen as requested. The contract was administered for the Demopolis project by William E. Goodman, the business agent for the District Council. Local 3200 in Demopolis, Alabama, a local in Selma, Alabama, and Local 1337 were under the jurisdiction of the District Council. Goodman maintained a hiring hall in Tuscaloosa, Alabama. The company's superintendent of millwrights was instructed to call Goodman when he needed employees. The 192 millwrights employed at various times on the Demopolis project were secured through the Tuscaloosa hiring hall. After a promise by the company's General Manager that an attempt would be made to secure an increase for them if they would return to work, the millwrights returned to work; however, on or about December 21, no increase having been given, they threatened to walk out again, but were persuaded by the General Manager to wait a short while during which he promised to attempt again to secure the increase. On Friday, December 28, no raise in wages having been given, every millwright but the union steward again walked off the job. On December 29 the company's General Manager sent a telegram to business agent Goodman requesting that he secure 50 millwrights immediately. Upon receipt of this wire Goodman attempted to persuade the millwrights who had walked off the job to return, and issued a number of referrals to certain of them. On January 2, 1957, a few of the strikers who had been issued referrals appeared at the project gate, but due to some mixup they left without returning to work. Later on January 2 nine millwrights who had been secured by Goodman arrived from a Sheffield, Alabama, local, presented their referrals and went to work. On the same day the Ferguson Company and an international representative of the Carpenters Union negotiated a supplemental agreement increasing the wages for the duration of the project. Also on that date the company officials requested more millwrights of Goodman, and he transmitted this request to another local union in Chattanooga, Tennessee. During this entire period the company made it plain to Goodman that the striking millwrights were acceptable to them if Goodman would issue them their referrals. After making arrangements with the Sheffield local and the Chattanooga local for 47 millwrights, on January 3, 1957, Goodman revoked the referrals issued to the former millwrights and so advised his representative at the Demopolis, Alabama, project.
 
 
 10
 There is no question that the hiring practices in the Demopolis-Tuscaloosa area as adhered to by both the company and the respondent unions created a closed shop condition on the Demopolis project. This is true since the company not only hired exclusively through the hiring hall maintained by Goodman, but it granted Goodman absolute control over the selection of millwrights for this project, and it refused, without any questions asked, to employ millwrights unless they could secure referrals from Goodman. By such conduct the Ferguson Company made Goodman its agent in determining an individual's eligibility for employment and by doing so became liable for any unfair practices committed by Goodman in connection with his hiring or refusing to hire. As the Second Circuit stated in Morrison-Knudsen Company v. N. L. R. B., 275 F.2d 914, 917, cert. denied 366 U.S. 909, 81 S.Ct. 1082, 6 L.Ed.2d 234:
 
 
 11
 "[A]n employer may not avoid liability for violations of the Act by the hiring hall when he has turned over to it the task of supplying the men to be employed. The Local acted as agent for the petitioners in selecting the men to be hired. Its discriminatory acts, which unlawfully encourage membership in Local 545, are properly chargeable to the agent's principal as discriminatory acts by it."
 
 
 12
 Thus the evidence that was before the Board supports the Board's finding that the agreement between the Ferguson Company and the respondent unions with reference to securing employees through Goodman exclusively, as the agent for the parties, created a closed shop condition in the Demopolis-Tuscaloosa area. Such conduct, without any question, encourages membership in the local unions and, therefore, constitutes violations of § 8(b) (1) (A) and 8(b) (2) of the Act by the unions and § 8(a) (3) and (1) by the company. N. L. R. B. v. George D. Auchter Co., 209 F.2d 273 (5th Cir.); N. L. R. B. v. Local Union No. 85, Sheet Metal Wkrs.' Int. Ass'n, 274 F.2d 344 (5th Cir.), cert. denied 366 U.S. 908, 81 S.Ct. 1082, 6 L.Ed.2d 234; N. L. R. B. v. Local Union No. 450, etc., 281 F.2d 313 (5th Cir.), cert. denied 366 U.S. 909, 81 S.Ct. 1084, 6 L.Ed.2d 235.
 
 
 13
 The eight named employees that the Board found to have been discriminated against in this proceeding were among the striking millwrights. The Board found in this connection, and the record submitted to this Court amply supports that finding, that as a result of the employees' failure to obey Goodman, their referrals were revoked and they were denied the right to return to work for the company. These employees were, therefore, the victims of Goodman's discriminatory employment policy, which policy was acquiesced in by the Ferguson Company. The obligations which Goodman required the former employees to meet before he would issue them another referral, as these obligations were found to exist by the Board, constituted unlawful requirements relating to union membership, and the respondent unions by interposing them between the employees and their jobs violated § 8(b) (1) (A) and 8(b) (2) of the Act, and the company by condoning or acquiescing in such conduct violated § 8(a) (1) and (3) of the Act. N. L. R. B. v. George D. Auchter Co., supra; N. L. R. B. v. Local Union No. 85, Sheet Metal Wkrs.' Int. Ass'n, supra; N. L. R. B. v. Local 1423, etc., 238 F.2d 832 (5th Cir.); N. L. R. B. v. Millwrights' Local 2232, District Council, etc. (5th Cir.), 277 F.2d 217, cert. denied 366 U.S. 908, 81 S.Ct. 1083, 6 L.Ed.2d 234.
 
 
 14
 The Board did not find, and this Court does not hold, that the contract between the company and the union and the practice followed in using Goodman as its exclusive hiring agent made the transaction illegal per se. As stated by the Supreme Court in Local 357, International Brotherhood of Teamsters, etc. v. N. L. R. B., 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11, such contracts are not illegal upon their face. However, under the circumstances in this case the factual findings by the Board, which findings, when the record is considered as a whole, are supported by substantial evidence, clearly reflect discrimination on the part of the company in refusing to employ and discrimination on the part of the unions in refusing to refer for employment. This discrimination by the company and the unions reflects the "true purpose" or "real motive" that makes the arrangement illegal. Local 357, International Brotherhood of Teamsters, etc. v. N. L. R. B., supra.
 
 
 15
 The finding by the Board that the respondent unions had unlawfully exacted permit fees or "dobies" from nonmembers as a condition to referral by Goodman is amply supported by the record. The Board in directing reimbursement of these fees for remedial purposes properly acted within its discretionary authority. Local 60, United Brotherhood of Carpenters v. N. L. R. B., 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1.
 
 
 16
 The Board's order will be enforced.
 
 
 
 Notes:
 
 
 [1]
 61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq
 
 
 [2]
 The pertinent provisions of the statute are:
 "(a) It shall be an unfair labor practice for an employer —
 "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;"
 * * * * *
 "(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: * * *."
 * * * * *
 "(b) It shall be an unfair labor practice for a labor organization or its agents —
 "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: * * *
 "(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;"