## NATIONAL LABOR RELATIONS BOARD *v.* FANT MILLING CO.

No. 482. Argued May 20, 1959.—Decided June 15, 1959.

*Dominick L. Manoli* argued the cause for petitioner. With him on the brief were *Solicitor General Rankin, Jerome D. Fenton, Thomas J. McDermott* and *Frederick U. Reel.*

*O. B. Fisher* argued the cause and filed a brief for respondent.

MR. JUSTICE STEWART delivered the opinion of the Court.

The National Labor Relations Act makes it an unfair labor practice for an employer to refuse to bargain in good

faith with the representative of his employees.[1] The question presented by this case is the extent to which the Labor Board may, in formulating a complaint and in finding a violation of this section of the Act, take cognizance of events occurring subsequent to the filing of the charge upon which the complaint is based.

Pursuant to an election a union was certified in June 1953 as the exclusive bargaining representative for an appropriate unit of the respondent's employees at its plant in Sherman, Texas. During the ensuing months agents of the union and of the respondent met on several occasions for the supposed purpose of working out a collective bargaining contract. By May 20, 1954, several such meetings had taken place, but no agreement had been reached.

On that date the union filed a charge with the Regional Director of the Board, alleging that the respondent had violated § 8 (a)(5) of the Act by refusing to bargain collectively with the union. Two months later the Regional Director advised the union that he was refusing to issue a complaint on the ground that "it does not appear that there is sufficient evidence of violations to warrant further

---

[1] "Sec. 8 (a) It shall be an unfair labor practice for an employer— . ... (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9 (a). . . . (d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession . . ." 29 U. S. C. § 158 (a).

proceedings at this time." The union requested the General Counsel of the Board to review this refusal.[2]

. In the meantime and until October 1954 more than a dozen further meetings were held between representatives of the union and of the respondent. No real progress towards reaching an agreement was made. In October, while negotiations were still going on, the respondent unilaterally put into effect a general wage increase without prior notice to the union. A few weeks later the respondent advised the union that it was withdrawing recognition and that it would refuse any further bargaining conferences.

Thereafter, in January 1955, the Regional Director informed the union that "upon reconsideration of the facts and circumstances, and additional evidence furnished us in connection with our investigation in the above matter, we have decided to and are hereby withdrawing our refusal to issue Complaint with respect to the 8 (a)(5) allegation of refusal to bargain . . . . We shall proceed with our investigation in due course." Later the Board's General Counsel advised the union as follows: "With respect to the 8 (a)(5) allegation of refusal to bargain; the Regional Director advised the parties by letter dated January 24, 1955, that he was withdrawing his dismissal of the 8 (a)(5) portion of the charge and was continuing with the investigation thereof. All further inquiries with respect to the 8 (a)(5) allegation should be addressed to the Regional Director." Five days afterwards the Regional Director issued a complaint, alleging that "on or about November 21, 1953, and at all times thereafter,

---

[2] The respondent continues here to press the claim that this request was not timely under § 102.19 of the Board's Rules and Regulations, although the uncontroverted evidence shows that the request was filed within an extension of time that had been granted.

Respondent did refuse and continues to refuse to bargain collectively . . . ."; that "On or about October 7, 1954, Respondent, without notice to the Union, put into effect a general wage increase . . . ."; and that by those acts "Respondent did engage in and is hereby engaging in an unfair labor practice within the meaning of Section 8 (a), subsection (5) of the Act." [3]

The Board, agreeing with its Trial Examiner, held that the respondent had refused to bargain collectively with the union within the meaning of the Act, finding that "after November 21, 1953, . . . the Respondent was merely going through the motions of collective bargaining without a genuine intention of trying to negotiate an agreement with the Union as required by the provisions of the Act." An appropriate order was accordingly issued. 117 N. L. R. B. 1277.[4] The Board expressly held that the respondent's unilateral grant of a general wage increase in October of 1954, although occurring subsequent to the original charge and not the subject of an amended charge, was properly included as a subject of the complaint. Moreover, its finding of a refusal to bargain was largely influenced by this specific conduct on the part of the respondent.[5] One member of the Board dissented

---

[3] The chronology of these events refutes the respondent's claim that the Regional Director acted while the matter was under review by the General Counsel. The General Counsel had exercised his reviewing authority prior to the time the complaint issued.

[4] The Board ordered the respondent to cease and desist from refusing to bargain; to refrain from interfering with the union's efforts to bargain; upon request, to bargain collectively with the union; and to post appropriate notices.

[5] The language of the Board's decision makes clear how strongly it relied upon the October 1954 wage increase in reaching its conclusion, e. g.: "We have no difficulty in determining the Respondent's bad faith throughout these protracted negotiations, particularly in view of the Respondent's unilateral effectuation of a general wage

upon the ground that the October wage increase could not lawfully be made the basis of a finding that the respondent had violated the Act.

The Court of Appeals denied the Board's petition for enforcement. 258 F. 2d 851. Substantially agreeing with the reasoning of the dissenting Board member, the court held that § 10 (b) of the Act requires "that a charge must set up *facts* showing an unfair labor practice . . . , and the *facts must be predicated on actions which have already been taken*." (Emphasis in original.)[6] It further held that "the complaint must faithfully reflect the

---

increase early in October 1954, while the negotiations were still in progress but without consultation with or even notice to the Union. . . .

.     .     .     .     .

"We find, rather, that the giving of this general increase while negotiations were still continuing, and in complete disregard of the Union's representative status, provides the final insight into the Respondent's conduct of negotiations with the Union."

[6] Section 10 (b) of the Act provides: "Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge. Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon." 29 U. S. C. § 160 (b).

facts constituting the unfair labor practices as presented in the charge." [7]

To attribute so tightly restricted a function to a Board complaint is, as this Court pointed out in *National Licorice Co.* v. *Labor Board,* 309. U. S. 350, not consonant with the basic scheme of the Act. One of the issues in that case was substantially identical to the issue presented here— "whether the jurisdiction of the Board is limited to such unfair labor practices as are set up in the charge presented to the Board so as to preclude its determination that [certain actions on the part of the employer] involved unfair labor practices, since both occurred after the charge was lodged, with the Board. . . ." 309 U. S., at 357. The Court's resolution of the issue was unambiguous:

> "It is unnecessary for us to consider now how far the statutory requirement of a charge as a condition precedent to a complaint excludes from the subsequent proceedings matters existing when the charge was filed, but not included in it. Whatever restrictions the requirements of a charge may be thought to place upon subsequent proceedings by the Board, we can find no warrant in the language or purposes

---

[7] Judge Cameron wrote the prevailing opinion for the court. Chief Judge Hutcheson wrote a separate concurring opinion in which he agreed with Judge Cameron's view: "In short, what has happened here is that by the device of injecting into the case entirely new matter completely unrelated to the charge, the regional director, in violation of the provisions of the Act, that no complaint can be filed except one based upon a charge, has filed a complaint, and the Board has heard and condemned the respondent in respect of matters which, because of the lack of a charge, were not before it." Judge Rives dissented, expressing the view that "the . . . construction . . . by the majority seems to me excessively technical and restrictive, and, if sustained, I believe that it will seriously cripple the Board in any effective enforcement of the Act."

of the Act for saying that it precludes the Board from dealing adequately with unfair labor practices which are related to those alleged in the charge and which grow out of them while the proceeding is pending before the Board. The violations alleged in the complaint and found by the Board were but a prolongation of the attempt to form the company union and to secure the contracts alleged in the charge. All are of the same class of violations as those set up in the charge and were continuations of them in pursuance of the same objects. The Board's jurisdiction having been invoked to deal with the first steps, it had authority to deal with those which followed as a consequence of those already taken. We think the court below correctly held that 'the Board was within its power in treating the whole sequence as one.' " 309 U. S. 350, at 369.

In the present case, as in *National Licorice,* the unilateral wage increase was "of the same class of violations as those set up in the charge . . . ." The wage increase was "related to" the conduct alleged in the charge and developed as one aspect of that conduct "while the proceeding [was] pending before the Board."

A charge filed with the Labor Board is not to be measured by the standards applicable to a pleading in a private lawsuit. Its purpose is merely to set in motion the machinery of an inquiry. *Labor Board v. I. & M. Electric Co.*, 318 U. S. 9, 18. The responsibility of making that inquiry, and of framing the issues in the case is one that Congress has imposed upon the Board, not the charging party. To confine the Board in its inquiry and in framing the complaint to the specific matters alleged in the charge would reduce the statutory machinery to a vehicle for the vindication of private rights. This would be alien to the basic purpose of the Act. The Board was

created not to adjudicate private controversies but to advance the public interest in eliminating obstructions to interstate commerce, as this Court has recognized from the beginning. *Labor Board* v. *Jones & Laughlin,* 301 U. S. 1.

Once its jurisdiction is invoked the Board must be left free to make full inquiry under its broad investigatory power [8] in order properly to discharge the duty of protecting public rights which Congress has imposed upon it. There can be no justification for confining such an inquiry to the precise particularizations of a charge. For

---

[8] Section 11 of the Act provides: "Investigatory powers of Board. For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by section 9 and section 10—(1) Documentary evidence; summoning witnesses and taking testimony.

"The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. Within five days after the service of a subpena on any person requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpena if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings, or if in its opinion such subpena does not describe with sufficient particularity the evidence whose production is required. Any member of the Board, or any agent or agency designated by the Board for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence. Such attendance of witnesses and the production of such evidence may be required from any place in the United States or any Territory or possession thereof, at any designated place of hearing." 29 U. S. C. § 161.

these reasons we adhere to the views expressed in *National Licorice Co.* v. *Labor Board.*[9]

What has been said is not to imply that the Board is, in the words of the Court of Appeals, to be left *"carte blanche* to expand the charge as they might please, or to ignore it altogether."   258 F. 2d., at 856.   Here we hold only that the Board is not precluded from "dealing adequately with unfair labor practices which are related to those alleged in the charge and which grow out of them while the proceeding is pending before the Board." *National Licorice Co.* v. *Labor Board,* 309 U. S. 350, at 369.   It follows in the present case that the October wage increase was a proper subject of the Board's complaint and was properly considered by the Board in reaching its decision.[10]

*Reversed.*

---

[9] The 1947 amendments to the National Labor Relations Act made no change with respect to the respective functions of a charge and a complaint.   The only change in § 10 (b) was the addition of the provisions that "No complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge, etc.".   See note 6, *supra.*   This limitation extinguishes liability for unfair labor practices committed more than six months prior to the filing of the charge.   It does not relate to conduct subsequent to the filing of the charge.

[10] The Board urges that we instruct the Court of Appeals to enforce the Board's order.   We decline to do so.   Cf. *Labor Board* v. *Pittsburgh S. S. Co.,* 340 U. S. 498.   However, we think it appropriate to state that if the factual summary contained in Judge Rives' dissenting opinion finds support in the record as a whole, the Board's order should be enforced "even though the court would justifiably have made a different choice had the matter been before it *de novo." Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474, 488.