NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LOCAL UNION NO. 450, INTERNA-
TIONAL UNION OF OPERATING EN-
GINEERS, AFL–CIO, and W. S. Chen-
nault, Its Business Representative, Re-
spondents.

No. 17977.

United States Court of Appeals
Fifth Circuit.

July 12, 1960.

314

Melvin Pollack, Atty., N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Thomas J. McDermott, Associate Gen. Counsel, N.L.R.B., Washington, D. C., Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Russell Specter, Attorneys, National Labor Relations Board, Washington, D. C., for petitioner.

Robert C. Eckhardt, Houston, Tex., for respondents.

Before CAMERON, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The National Labor Relations Board petitions this Court [1] for enforcement of an order issued December 19, 1958, against Local Union No. 450, International Union of Operating Engineers, AFL-CIO, and against the Union's business representative, W. S. Chennault.[2] We modify the order and enforce it as modified.

The Board found that the respondents violated Section 8(b) (2) and (1) (A) of

---

1. Section 10(e) of the National Labor Relations Act as amended (61 Stat. 136, 29 U.S.C.A. § 158).

2. The Board's decision and order are reported at 122 N.L.R.B. No. 78.

the National Labor Relations Act, 29 U. S.C.A. § 158(b) (2) and (1) (A), in two respects: (1) by maintaining a discriminatory hiring arrangement that gave preference to Union members and (2) by causing the Company to discriminate against J. R. Rittenberry, an employee of the Company and a member of the Union. The Board found also that the respondents violated Section 8(b) (1) (A) by threatening Rittenberry with loss of employment if he did not withdraw his charges of unfair labor practices. The Board order requires the Union and Chennault to cease and desist from causing or attempting to cause the Company or any other employer to engage in discriminatory hiring. Affirmatively, the order requires the Union to reimburse the Company's employees for all fees or dues collected from them under the unlawful hiring arrangement within the period beginning six months before the filing and service of the unfair labor charge; to make Rittenberry whole for any loss he suffered because of the discrimination against him; and to post the usual notices.

The appeal raises the following questions: (1) Is there substantial evidence to support the Board's finding as to the discriminatory hiring arrangement? (2) Is there substantial evidence to support the finding as to Rittenberry? (3) Is the charge sufficient to support the allegations of the complaint? (4) Is the Board's order valid and proper?

## I. The Discriminatory Hiring Arrangement.

■ Tellepsen Construction Company performs maintenance and repair operations at Dow Chemical Company plants at Velasco and Freeport, Texas. From July 1954 to April 1958 the Company was a party, among other employers, to contracts negotiated by the Union and the Houston Chapter of Associated General Contractors. The contracts required the Company to appoint at each plant a master mechanic to have "full and com-

plete charge of the men under him." Master mechanics were required to have at least three years experience at their trade. The record shows that no one could become a master mechanic without the Union's clearance. The Union would not approve a master mechanic unless he had been a member of the Union for at least three years. As a member of the Union, the master mechanic was obligated under Article XXIII of the International Union's Constitution to "hire none but those in good standing with a Union having jurisdiction over the work to be done".

The Company was obliged to recruit operating engineers through the master mechanics who hired the engineers exclusively from the Union hiring hall. Whenever the company construction superintendent would tell the master mechanic how many engineers of a certain classification he wanted on a particular job the master mechanic would transmit this information to Chennault, the business agent of the Union, and Chennault would select qualified men from the top of the "out-of-work" list maintained solely for Union members. The persons Chennault selected presented referral slips, signed by Chennault, to the Company's timekeeper. They were then entered on the payroll. On these facts the Board found that respondents violated Section 8(b) (2) and (1) (A) of the Act by maintaining an exclusive hiring hall arrangement with the Company by giving a preference to Union members. The record fully sustains the Board's finding.

■■ In N. L. R. B. v. Millwrights' Local 2232, April 11, 1960, No. 17777, 277 F.2d 217, this Court makes the point that when the Constitution or By-laws of the International Union requires member-foremen to hire only union men, this is evidence in itself of a discriminatory hiring practice. Here, in addition, there was testimony that the Union made it impossible for the Company to hire nonunion members. Such conduct on the

part of the Union violates Section 8(b) (2) and (1) (A) of the Act.[3]

## II.   Rittenberry.

### A.   The refusal to clear Rittenberry for promotion.

■ Rittenberry's experience as an operating engineer dated back to 1927. Early in 1953, one of the Company's construction superintendents told Rittenberry that he would have to join the Union if he wished to work for the Company. When he joined the Union in 1953 he was examined by a board, that included Chennault, about his knowledge of the trade and his experience. He passed the qualifying examination, was admitted to the Union, and began working for the Company as an operating engineer in March 1953. In 1955 Superintendent Farmer told Rittenberry that he intended to promote him to master mechanic. Farmer requested Chennault to clear Rittenberry for the promotion. Chennault agreed. Later Chennault changed his mind and told Farmer that he could not approve Rittenberry, because his union book showed that he did not have the three years experience, meaning three years experience while a member in the Union. The record shows clearly that Rittenberry was a qualified engineer and mechanic with long years of experience. The Board was fully justified in holding that appointment of Cannard as a master mechanic, instead of Rittenberry, violated Section 8(b) (2) and (1) (A) of the Act. N. L. R. B. v. Gaynor News Co., 2 Cir., 197 F.2d 719, 723, affirmed sub. nom. Radio Officers Union of Commercial Telegraphers Union, A. F. L. v. N. L. R. B., 1954, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455.

### B.   Refusal to clear Rittenberry for work.

■ Rittenberry had other difficulties with the Union. In July 1956 the Union went on strike at a time when he was on his vacation. He did not participate in the picketing when he returned from vacation. He testified however that no one requested him to walk the picket line. The strike ended on August 14, 1956. The Company notified Chennault that the men should report to the Union hiring hall to be dispatched to their former jobs as soon as the equipment was ready. The next day, Chennault told Rittenberry that the Union had adopted a resolution that any member of the Union who had not walked the picket line would be placed at the bottom of the out-of-work list and assessed $7.50 for each tour of picket duty missed. Rittenberry insisted that he had a right to return to his job without going through the out-of-work list. Under protest, he offered to pay $22.50 for the three tours of picket duty he missed. Chennault ruled that Rittenberry still had to go to the bottom of the out-of-work list. Rittenberry then left the union hall without paying the $22.50.

August 16, 1955, Rittenberry asked master mechanic Cannard about returning to work. Cannard told him that he could not put him back to work until he straightened out his difficulties with the Union. November 21, Rittenberry asked Cannard again why he had not been called back to work. Cannard replied that he had been "informed by the Local not to call for [Rittenberry]". In March 1956, Superintendent Looper asked Chennault if Rittenberry could return to work. This time Chennault did not object but he placed Rittenberry's name on the out-of-work list. March 20, 1956, Looper asked for Rittenberry and Rittenberry returned to work.

We agree with the Board that the evidence shows clearly that although Rittenberry was available for work shortly after the strike ended on August 14,

---

3. N.L.R.B. v. Local Union 85, Sheet Metal Workers, 5 Cir., Feb. 11, 1960, No. 17694, 274 F.2d 344; N.L.R.B. v. George D. Auchter Co., 5 Cir., 209 F.2d 273; N.L.R.B. v. Local 542, 3 Cir., 1948, 255 F.2d 703; N.L.R.B. v. Local 369, Hod Carriers, 3 Cir., 240 F.2d 539; N.L.R.B. v. United Brotherhood of Carpenters and Joiners of America Local 517, 1 Cir., 1956, 230 F.2d 256; N.L.R.B. v. Daboll, 9 Cir., 1954, 216 F.2d 143; N.L.R.B. v. Philadelphia Iron Works, 3 Cir., 1954, 211 F.2d 937.

1955, the Union prevented his return to work until March 1956. This action of the Union was a violation of the Act.

### C. Coercion to force withdrawal of charges.

■ On September 1, 1955, Rittenberry filed unfair labor practice charges with the Board against the respondents. Two weeks before the Board hearing, Earl Ford, a Union business representative told Rittenberry that if he did not "drop the charges" he would lose his Union "book" and he "wouldn't be able to go to work nowhere". Shortly before the hearing, Homer Pierce, the Union's business manager, repeated these threats to Rittenberry. This evidence supports the Board's finding that respondents violated Section 8(b) (1) (A) of the Act by threatening Rittenberry with loss of employment if he did not withdraw his unfair labor practice charges.

### III. Sufficiency of the Charge.

Section 10(b) of the Act requires that unfair labor practices in a complaint must be supported by a charge.[4] Rittenberry charged that the Union and Chennault coerced the employees and discriminated against him, as a result of the Union's discriminatory hiring arrangement with the Company.

■■ An unfair labor practice complaint may deal with "unfair labor practices which are related to those alleged in the charge". National Licorice Co. v. N. L. R. B., 1940, 309 U.S. 350, 369, 60 S.Ct. 569, 579, 84 L.Ed. 799. See also N. L. R. B. v. Fant Milling Co., 1959, 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed.2d 1243; Building Material Teamsters, Local 282, etc. v. N. L. R. B., 2 Cir., March 2, 1960, 275 F.2d 909; N. L. R. B. v. Dinion Coal Co., 2 Cir., 1952, 201 F.2d 484. The charge alleged that in violation of the

Act the respondents caused the Company to "terminate the employment of J. R. Rittenberry". It alleged that the respondents restrained and coerced the Company's employees in the exercise of rights guaranteed in Section 7 of the Act. The complaint specifically recited that respondents violated Section 8(b) (1) (A) and (2) by causing the Company to discriminate against Rittenberry by denying him a promotion and by refusing to hire him from August 15, 1955 until March 20, 1956. The complaint states that this discrimination resulted from the respondents' operation of a discriminatory hiring arrangement. Thus, the unfair labor practices alleged in the complaint "related to" the specific charges of discrimination against Rittenberry and exemplified the coercion of employees alleged in the charge. We agree with the Board, therefore, that the charge was sufficient to support the allegations of the complaint. N. L. R. B. v. Talladega Cotton Factory, Inc., 5 Cir., 1954, 213 F.2d 209; N. L. R. B. v. Westex Boot & Shoe Co., 5 Cir., 1951, 192 F.2d 12.

■ Undiscouraged by previous decisions of this Court and other Courts of Appeals, the Board again seeks enforcement of the Brown-Olds order imposing reimbursement of union dues more as a penalty than as a remedy for the union's unfair labor practices. In this case the Board asks that all of Tellepsen's employees be reimbursed in full for dues and fees collected within a six month period before the charge. The argument is that if reimbursement is not made to all the employees the Union will not be deterred in the future, since it will consider the risk of a cease and desist order a moderate cost for maintaining an illegal closed shop arrangement with an employer.

---

4. As introduced in the Senate, the Wagner Bill (S. No. 1958, 74th Cong. 1st Sess.) gave the Board the power to institute proceedings whenever it had reason to believe that an unfair labor practice existed. As finally adopted however Section 10(b) limits the Board to prosecutions of violations brought to its attention by aggrieved parties. Judge Friendly has pointed out that this "provision contrasts not only with the Federal Trade Commission Act but with other Federal regulatory laws". Building Material Teamsters, Local 282, etc. v. N.L. R.B., 2 Cir., 1959, 275 F.2d 909, 913.

This Court has considered and rejected the Brown-Olds remedy [5] in two recent cases. N. L. R. B. v. Local 85, Sheet Metal Workers, 5 Cir., Feb. 11, 1960, No. 17694, 274 F.2d 344, 346 involved an illegal hiring hall arrangement. Judge Jones, for this Court, rejected the portion of the Board's order requiring the Union to refund initiation fees, dues, and assessments collected from all the company's employees:

> "It cannot be said, we think, that there is evidence to show that any of the members of the Union would have declined to pay dues and surrendered their Union membership if Union membership had not been necessary in the procuring of employment * * * To say, as we have said, that there was a discrimination tending 'to encourage union membership' is not to say that the union members on the job became members or retained their membership in the Union in order to secure or retain employment with Mahon. In the absence of some proof that dues would not have been paid but for the requirement, the Board's reimbursement order becomes punitive rather than compensatory. As a punitive measure the refund provisions of the Order should not be enforced."

In N. L. R. B. v. Millwrights' Local 2232, 5 Cir., April 11, 1960, No. 17777, 277 F.2d 217, 222, Judge Brown, for the Court, refused to enforce portions of an order requiring reimbursement of all millwrights' dues and assessments illegally collected: "In the absence of some proof that the dues and assessments would not have been paid except as a requirement for obtaining employment, we think the order of restoration intended as a compensatory remedy results instead in a windfall to the employees and an unjust penalty to the Union."

The Trial Examiner found that the record did not show clearly whether dues and initiation fees were unlawfully collected from all of Tellepsen's employees. Moreover, the Board admits that, except as to Rittenberry, there is no evidence that the employees would not have paid dues and assessments except as a prerequisite for obtaining employment. In the circumstances of this case, this Court is not willing to sanction the Board's application of the Brown-Olds remedy.

■■■ We recognize, of course, that the role of the Board is not to remedy a private wrong or compensate for personal loss. It is to vindicate public rights under the Act. But a Board order should not stand if it is not fairly within the purposes of the Act and supported by sufficient evidence. We are in agreement with Judge Staley, speaking for the Court, in N. L. R. B. v. American Dredging Co., 3 Cir., 1960, 276 F.2d 286, 288:

> "In the circumstances of this case, we cannot perceive how reimbursing employees who the evidence shows were all union members for initiation fees, dues and other monies paid to the union could in any way effectuate the policies of the Act. This case involves preferment of union members for employment, and thus it is incomprehensible to us how reimbursing them for initiation fees, dues payments, etc., paid to their union can be anything but a windfall to the employees and an unjust penalty to the employer. This was certainly no purpose of the National Labor Relations Act."

See also Building Material Teamsters, Local 282, etc. v. N. L. R. B., 2 Cir., March 2, 1960, 275 F.2d 909; Local 357, International Brotherhood of Teamsters, etc. v. N. L. R. B., 1960, 107 U.S. App. D.C. 188, 275 F.2d 646, certiorari granted, 80 S.Ct. 1610; N. L. R. B. v. Local 60, United Brotherhood of Carpenters and Joiners of America, AFL-CIO, etc., 7 Cir., 1960, 273 F.2d 699, certiorari granted, 80 S.Ct. 1610; Morris-Knud-

---

5. United Association of Journeymen and Apprentices of Plumbing and Pipefitting Industry of the United States and Cana-da, AFL–CIO (J. S. Brown—E. F. Olds Plumbing and Heating Corporation, 115 N.L.R.B. 594 (1956)).

sen Co., Inc. v. N. L. R. B., 9 Cir., 1960, 276 F.2d 63.

The Board order is modified by striking out that portion of the order providing for reimbursement of dues and fees paid by Tellepsen's employees. The remainder of the order, including the portion dealing with J. R. Rittenberry, is enforced.