Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 282, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA.

No. 61–C–704.

United States District Court
E. D. New York.

Nov. 17, 1961.

Jacques Schurre, Washington, D. C., for the National Labor Relations Board.

Cohen & Weiss, by Herbert A. Levy, New York City, for Local 282.

RAYFIEL, District Judge.

The petitioner, as Regional Director of the National Labor Relations Board, hereinafter called the Board, has made application under Section 10(*l*) of the National Labor Relations Act (Title 29 U.S.C.A. § 160(*l*) ), hereinafter called the Act, for an injunction pending the Board's determination of charges filed with it by J. J. White Ready Mix Corp., hereinafter called White, alleging the violation by the respondent of the provisions of Section 8(b) (4) (i) (ii) (B) of the Act, 29 U.S.C.A. § 158(b) (4) (i) (ii) (B), which makes it an unfair labor practice for a union or its representatives

"(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof, is—* * *

"(B) forcing or requiring any person to cease using selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person * * *."

The petition alleges, *inter alia*, that the charge was referred to the petitioner, as Regional Director of the Board for the Second Region, and that after investigation thereof he has reasonable cause to believe that the charge is true, and that a complaint based thereon should issue against the respondent, as provided for in Section 10(b) of the Act.

The petition further alleges that on various dates therein specifically mentioned the respondent picketed a number of sites where construction work was in progress while White's trucks were making deliveries of concrete or receiving materials for its plant operations, although the respondent had no labor dispute with the employers or persons then and there engaged in construction work, and, by threats or promises, induced or attempted to induce such employers or persons to cease buying White's concrete mix or supplying it with materials necessary to produce same; that as a result of such threats or promises most of said employers or persons have refused to purchase White's concrete; and that at one of such sites respondent's pickets assaulted two of White's drivers.

A hearing on petitioner's application was held on October 6, 1961. Testimony was adduced and documentary evidence received. The facts, based on the pleadings and the evidence, follow.

White is engaged in the manufacture and sale of ready-mixed concrete, and maintains its plant at Hicksville, Long Island, New York. It purchases annually from sources outside the State of New York considerably upwards of $50,000 worth of the cement which it uses in the manufacture of its product. The drivers of its ready-mix trucks, of whom there are seven, report to the plant at the opening of each working day, and each driver makes several trips during the day between the plant, where his truck receives its load of concrete, and the construction sites of White's various customers, where the product is poured from the trucks into forms prepared therefor. At the close of the day the drivers return to the plant where the trucks are stored.

On or about August 14, 1961 the respondent commenced, and for a considerable time thereafter continued to picket the White plant, as well as a number of construction sites where and while White's drivers were making deliveries of concrete to its customers, and where, as hereinafter appears, they engaged in acts and conduct violative of Section 8(b), supra, of the Act.

Manuel J. Henriques testified that the corporation of which he is President was engaged in concrete construction work at the Times Square Shopping center, in Levittown, Long Island, and that during the course of its work one D'Ambrosio, a representative of the respondent, approached him and asked whether he was purchasing concrete mix from White. He informed him that he was, whereupon D'Ambrosio said that he knew Henriques employed nonunion drivers on two of his "flat" trucks, and that if he did not cease purchasing concrete from White he would put "Teamsters" on all of Henriques' trucks.

James McGlone, a truckman who hauls sand for White exclusively, testified that on September 12, 1961 he left the White plant with instructions to pick up a load of sand from Asprea and Sons Transit-mix Company, in Lindenhurst, Long Island. Two of respondent's representatives, Dunston and Mayer, followed him in an automobile, and entered the Asprea premises. As his truck was under the hopper, receiving a load of sand, Dunston and Mayer spoke to Asprea's shop steward, who thereupon asked him for his union book. When he informed him that he had none the steward told him that he would be permitted to leave with that load, but that he would "check and find out whether or not I could pick up any more material there". He returned later in the day for another load, but after considerable discussion with Neal Asprea, Vice-President of the company, and several of its employees, Neal told him to leave without the sand as he did not want to have any trouble with the union. McGlone's testimony was confirmed in part by Neal Asprea. McGlone testified fur-

ther that on September 14, 1961 he went to the plant of the East Setauket Sand and Gravel Corporation to pick up a load of sand for White. He was followed by Mayer, who entered the plant behind him. After his truck was loaded he entered the office to pay for the sand and saw Mayer engaged in conversation with officers and employees of the company, and as he was leaving one of the officers said "Don't bother coming back again, I don't want to have any trouble with the union."

Donald Ogilvie testified that he and Harry Campbell are engaged in the concrete contracting business, and that on September 12, 1961 his firm was performing construction work in a private garage at 58 Polo Lane, in Westbury, Long Island. One of White's trucks arrived with a load of concrete for the job. Its driver informed him that several men wanted to speak to him. He observed D'Ambrosio and two other men standing in front of the house and approached them. D'Ambrosio asked him not to accept the concrete as White was nonunion. Ogilvie told him that he intended to use White's concrete, and as White's driver, one Olson, entered his truck, one of the men accompanying D'Ambrosio called him a "miserable looking scab" and struck him in the eye, while the other entered the truck and ripped the shirt from Olson's helper, one Traynor. The latter confirmed Ogilvie's testimony. Olson summoned the police, but D'Ambrosio and his pickets drove off before they arrived.

Except for the fact that no assaults were involved therein, similar incidents occurred at a number of other construction sites. The respondent admits that, but for White, it has had no labor dispute with any of the employers engaged in work at any of such sites. Many of the acts complained of were directed at neutral *employers* as well as their *employees*.

The respondent offers three reasons why the petition should be dismissed:

(1) The Board is without jurisdiction to proceed herein because, briefly stated, the unfair labor practices alleged in the petition differ from and are unrelated to those referred to in the charge filed by White.

(2) Ambulatory picketing at the premises of secondary employers is permissible under the circumstances in the case at bar.

(3) There is no reasonable cause to believe that the respondent has violated the Act, and, accordingly, it would not be just and proper to grant injunctive relief.

### As to Point 1

█ The claim that the Board lacked jurisdiction is based on the conceded fact that the secondary employers named in the petition are not the same as those referred to in White's charge. The claim, nevertheless, is without merit. White's charge is dated August 18, 1961 and was filed on August 22, 1961. Most of the acts complained of in the petition, dated September 28, 1961, and testified to at the hearing, occurred after the filing of White's charge. In the case of Douds v. International Longshoremen's Association, 2 Cir., 241 F.2d 278, at page 284, Judge Medina stated, "The 'charge' has a lesser function [than the Board's complaint]. It is not designed to give notice to the person complained of or to limit the hearings or to restrict the scope of the final order. It serves *in limine* the function of drawing the Board's attention to a cause for economic disturbance, not abstractly or in an area not within the jurisdiction of the Board, but by alleging that some person has engaged in or is engaging in one of the unfair labor practices defined in Sections 8(a) and (b) of the Act. This done, the only relation required between the 'charge' and the 'complaint' is that the complaint deal with 'the same class of violations as those set up in the charge and [be] continuations of them in pursuance of the same objects.' National Licorice Co. v. N. L. R. B., 309 U.S. 350, 369, 60 S.Ct. 569, 579, 84 L.Ed. 799. In short, the 'charge' must allege the unfair labor practice to invoke the jurisdiction of the Board; and, by way of limitation, the complaint issued by the Board must deal with the same subject matter and sequence of events, N. L. R. B.

v. National Licorice Co., 2 Cir., 104 F.2d 655, 658, although the specific events stated in the complaint may precede or follow those stated in the 'charge'."

See also the case of National Labor Relations Board v. Fant Milling Co., 360 U.S. 301, at page 308, 79 S.Ct. 1179, 1183, 3 L.Ed.2d 1243, where the Court said, "Once its jurisdiction is invoked the Board must be left free to make full inquiry under its broad investigatory power in order properly to discharge the duty of protecting public rights which Congress has imposed upon it. *There can be no justification for confining such an inquiry to the precise particularizations of a charge.*" (Emphasis mine.)

### As to Point 2

■ The respondent contends that White's employees spend most of each working day away from the plant, making deliveries of concrete mix which is processed while the trucks are in transit, and that picketing, to be effective, must be conducted at locations of secondary employers. Nevertheless, the respondent picketed the White plant for *24 hours a day*. It is, of course, not disputed that it had the right to do so, since White is a primary employer with whom the respondent had a legitimate labor dispute, but it is unlikely that it would have done so if it doubted its effectiveness.

The respondent relies upon Moore Dry Dock Co., 92 N.L.R.B. 547, to support its contention that under the circumstances here present "ambulatory picketing" is permissible. I disagree. There *can* be circumstances under which ambulatory or secondary picketing may be necessary and justified. Such conditions were present in the Moore case, where the Board found that a vessel, moored at the premises of the secondary employer, was the *situs* of the labor dispute between the primary employer, the owner of the vessel, and the respondent union, whose pickets were directing their efforts at the seamen who were employed on the vessel. I doubt that conditions in the instant case justified respondent's secondary picketing, but, assuming that they did,

the manner of picketing in the Moore case differed considerably from that in the instant case in the following respects, among others. In Moore, the union placed its pickets outside the entrance to the shipyard. Here, in a number of instances, the respondent's pickets followed White's drivers into the premises of the secondary employers. In Moore, no attempt was made to interfere with the business of the *secondary* employer. Here, as aforementioned, there were several such incidents. In Moore, the picketing was peaceful, no attempt being made to interfere with the business activities of the primary employer. Here the pickets not only interfered with White's operations, but actually assaulted two of its employees.

### As to Point 3

On the basis of the foregoing facts, and others disclosed by the record of the hearing herein, respecting the conduct and activities of the respondent's representatives, I am satisfied that the charges contained in the petition herein have been sustained, and that there is a substantial basis for the Board's finding that there is reasonable cause to believe that the respondent, through its agents and representatives, have engaged in, and, unless enjoined, will continue to engage in acts which are violative of Section 8(b) (4) (i) (ii) (B) of the Act before the Board makes its determination of the charges filed by White. More particularly, I am satisfied that the respondent's representatives have in a number of instances attempted to induce, in several cases with success, employers doing business with White (or their employees) to refuse to handle or use its product, or to transport goods to or for it, their acts and conduct in several instances having the effect, if not the intent, of coercion.

Accordingly, the application for a temporary injunction is granted, to be effective until the Board has made its determination of White's charge.

Submit proposed findings of fact and conclusions of law in conformity herewith.