**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HOD CARRIERS' BUILDING & GENERAL LABORERS' UNION OF AMERICA, LOCAL NO. 652, AFL–CIO, Respondent.**

**No. 19708.**

United States Court of Appeals
Ninth Circuit.
Sept. 27, 1965.

**152**

———◆———

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixsen, Michael R. Brown, Attys., N. L. R. B., Washington, D. C., for petitioner.

Alexander H. Schullman, Los Angeles, Cal., for respondent.

Before MADDEN, Judge of the United States Court of Claims, and JERTBERG and DUNIWAY, Circuit Judges.

JERTBERG, Circuit Judge:

This case is before us on the petition of the National Labor Relations Board for an enforcement of its order issued against respondent pursuant to Section 10(c) of the National Labor Relations Act, as amended, (29 U.S.C. § 151 et seq.) The Board's decision and order are recorded at 147 N.L.R.B., No. 50. This court has jurisdiction of the proceedings under Section 10(e) of the Act.

The Board found, upon charges filed by one Waverly Arnold Brown, an individual, that respondent violated Section 8(b) (1) (A) and (2) of the Act by refusing to refer Brown for employment by Earl C. Worley, the employer, and by subsequently causing Worley to discharge Brown because of his violation of a union work rule and because of Brown's filing of an Unfair Labor Practice charge against the respondent. In its order the Board adopted the findings and conclusions of the Trial Examiner contained in his decision, and adopted with minor modifications the recommended order of the Trial Examiner.

On this appeal respondent contends:

1. That the Board lacks jurisdiction of the proceedings because:

(a) "There is no interstate commerce involved in this case"; and

(b) "There would be no jurisdiction with respect to this matter, since both the charging party and the twenty-first region failed to exhaust the substantive and procedural remedies involved"; and

2. "The findings of fact and conclusions of law and the order of the board are not in accordance with law, and are not supported by substantial evidence on the record considered as a whole."

We consider these contentions *seriatim*.

The charging party in this case is a plaster machine operator, a long time member of the Union, and employed by Earl C. Worley, a lathing and plastering contractor between whom and the Union existed a collective bargaining agreement.

During 1962, the applicable period for jurisdictional purposes, Worley performed lathing and plastering services as a subcontractor for Cal-Or, Inc., a California corporation engaged in the general contracting business.

In its decision and order the Board states:

"No evidence was adduced to show that Worley (1) either shipped

goods or furnished services outside the State (direct out-flow), (2) purchased goods or services which were furnished directly to him from outside the State (direct inflow), or (3) purchased goods or services from a seller within the State who received such goods or services from outside the State (indirect inflow)."

The record reveals, however, that Cal-Or paid Worley, in 1962, for lath and plaster work performed by him in that year on houses built by Cal-Or on the Anaheim Tract, the sum of $69,825.00. During the same year Cal-Or purchased major appliances for over $18,000.00 which were installed in the houses on the Anaheim Tract. These appliances were manufactured in eastern states and shipped by the manufacturer to its warehouse in California from which point they were delivered to Cal-Or. The Anaheim Tract was owned by Anaheim Properties, a limited partnership. The general partner was Ronal Development Company, a California corporation, which managed the operational affairs of Anaheim Properties. Anaheim Properties contracted with Cal-Or, Inc., for the latter to be the general contractor and to build forty-nine residential homes on the Anaheim Tract. Funds for such construction were obtained by Anaheim Properties through so-called construction loans and furnished by Anaheim to Cal-Or, Inc. These homes were sold in 1962 by Anaheim Properties through Westhome, Inc., a California corporation, licensed as a real estate broker for the State of California and engaged in the business of selling real estate, for more than $1,100,000.00.

One Alvin R. Stitch was president of Cal-Or, Inc., president of Ronal Development Company, and president of Westhome, Inc. He was also the owner of a majority of the capital stock of each of said corporations. Stitch, his wife, and his sister composed the board of directors of Cal-Or, Inc., and he, his wife, and one Donald Kelly composed the board of directors of Ronal Development Company. The three corporations and Anaheim Properties shared the same offices, and rental payments therefor. All of the entities employed the same firm of accountants and kept their business records in the common office. Salaries of common office employees were shared according to the amount of work performed for each of the four entities. Separate bank accounts were maintained but Stitch signed the checks drawn upon said accounts. Stitch managed all of the business operations and affairs for all of the entities, and established all labor policies other than the labor policies by which Cal-Or, Inc., was bound by virtue of a written agreement with the Union and Home Builders' Association, an employer association, which acted as representative of its members for the purpose of collective bargaining, and in which employer association Cal-Or, Inc., held membership.

Upon the foregoing the Board concluded that since the four entities were under the common control, ownership and management of Stitch, that they constituted a single employer for jurisdictional purposes. See Sakrete of Northern California, Inc., v. N.L.R.B., 332 F.2d 902 (9th Cir. 1964), C.D. 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556, rehearing denied, 380 U.S. 926, 85 S.Ct. 883, 13 L.Ed.2d 814.

Under standards it has developed the Board will assert jurisdiction over nonretail enterprises which do a gross annual business of at least $500,000.00 [1] and over nonretail enterprises which have an outflow or inflow across state lines of at least $50,000.00, whether such outflow or inflow be regarded as direct or indirect.[2] Thus an employer satisfies the Board's "indirect outflow" standard for nonretail enterprises if he performs annual services valued at a minimum of $50,000.00 for an employer who meets any of the Board's jurisdictional standards except

---

1. Carolina Supplies and Cement Co., 122 N.L.R.B. 88.

2. Siemons Mailing Service, 122 N.L.R.B. 81.

the Board's indirect outflow or indirect inflow standards for nonretail enterprises. Accordingly the Board held that since Worley performed services for the four entities for which he received in excess of $50,000, and since the entities grossed more than $1,100,000 from the sale of homes constructed on the Anaheim Tract, that Worley clearly met the indirect-outflow jurisdictional standards for nonretail enterprises.

The Board found that the entities above named and Worley were engaged, during all times material, in business affecting commerce within the meaning of § 2(6) and (7) of the Act.

Jurisdictional standards of the Board apart, the Board has jurisdiction to prevent unfair labor practices "affecting commerce." Such term means

"in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." 29 U.S.C. 152(7).

In our view the Board properly asserted jurisdiction in this case. See N.L. R.B. v. Reliance Fuel Oil Corp., 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963); Bon Hennings Logging Co. v. N. L. R. B., 308 F.2d 548 (9th Cir. 1962).

■ Respondent's contention that the Board lacked jurisdiction because of the failure of the charging party and the Twenty-first Region to exhaust administrative remedies is based on the failure of such parties to obtain a review of the action of the Regional Director in dismissing an unfair labor practice charge made by Brown against respondent by filing a request for a review of such action with the General Counsel of the Board at Washington, D. C. It appears that on July 23, 1962, in Case No. 21-CB-1925, Brown filed an unfair labor practice charge in the Twenty-first Region against Respondent. The charging part read as follows:

"On or about May 11, 1962, and several days thereafter, the above-named labor organization [Respondent], acting through its officers, agents or employees, by unlawfully refusing to dispatch the undersigned, caused or attempted to cause an employer, Earl C. Worley, LaPalma, Garden Grove, California, to discriminate against the undersigned in violation of Section 8(a) (3) of the Act.

"By these and other actions, said labor organization restrained or coerced employees in the exercise of the rights guaranteed by Section 7 of the Act."

On August 30, 1962, an amended charge was filed in substantially the same form. Under date of October 10, 1962, the charge as amended was dismissed by the Regional Director. The notice of dismissal stated:

"As a result of the investigation, it appears that, because there is insufficient evidence of violation, further proceedings are not warranted at this time. I am, therefore, refusing to issue complaint in this matter."

The notice further stated that a review of such action could be obtained by filing a request for such review with the General Counsel of the Board.

In support of its contention respondent cites several cases where respondents in administrative proceedings have been precluded from judicial review of an agency action for failure to exhaust administrative remedies. In our view the doctrine enunciated in such cases is inapposite here, where all that has happened has been the filing of a charge, its administrative dismissal without a hearing, and the filing of a new charge, based in part upon facts stated in the former charge. It is to be noted that the purpose of the charge filed with the Board "is merely to set in motion the machinery of an inquiry. National Labor Relations Board v. Indiana & Michigan Electric Co., 318 U.S. 9, 18 [63 S.Ct. 394, 87 L. Ed. 579]." National Labor Relations Board v. Fant Milling Company, 360 U.S.

301, 307, 79 S.Ct. 1179, 3 L.Ed.2d 1243 (1959).

As stated in Fant Milling, supra, at pp. 307–308, 79 S.Ct. at p. 1183,

"The Board was created not to adjudicate private controversies but to advance the public interest in eliminating obstructions to interstate commerce, as this Court has recognized from the beginning. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1 [57 S.Ct. 615, 81 L.Ed. 893]."

We believe that the dismissal or withdrawal of a charge, before a determination on the merits, does not bar the Board from proceeding if the charges are refiled on the discovery of new evidence. The violations of the Act found by the Board occurred on and after October 18, 1962. The Board did not find that respondent violated the Act by its conduct on May 11th. This was the subject of the charge dismissed by the Regional Director. Respondent has shown no injury resulting from the procedure in this case.

Finally, we consider respondent's contention that the findings of fact, conclusions of law, and the order of the Board are not supported by substantial evidence on the record considered as a whole. We have carefully reviewed the entire record of this case in the light of the admonition expressed in Universal Camera Corporation v. N.L.R.B., 340 U.S. 464, 71 S.Ct. 456, 95 L.Ed. 456 (1951), that it is our duty in determining the substantiality of evidence supporting a Labor Board decision to take into account contradictory evidence or evidence from which conflicting inferences could be drawn, and whatever in the record fairly detracts from its weight.

We are satisfied from our review of the record that the findings, conclusions and orders of the Board are supported by substantial evidence in the light that the record in its entirety furnishes.

The petition for enforcement of the Board's order is granted.