**LOCAL NUMBER 104, SHEET METAL WORKERS INTERNATIONAL AS-SOCIATION, AFL–CIO**
and
**Sheet Metal Joint Apprenticeship Committee, Petitioner,**

v.

**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Respondent.**

No. 49201.

United States District Court
N. D. California.

Jan. 14, 1969.

Peter Adomeit, of Neyhart, Grodin & Beeson, San Francisco, Cal., for petitioners.

David R. Cashdan, Washington, D. C., for respondent Equal Employment Opportunity Commission.

### ORDER REQUIRING PETITIONERS TO COMPLY WITH CERTAIN DEMANDS FOR ACCESS TO INFORMATION BY RESPONDENT

WOLLENBERG, District Judge.

A commissioner of respondent Equal Employment Opportunity Commission (EEOC) filed a charge with EEOC against the petitioners, Local 104, Sheet Metal Workers' International Association, AFL–CIO (Local 104), and the San Francisco Sheet Metal Joint Apprenticeship Committee. The commissioner relied on Section 706(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(a) for authority to make the charge, and the charge alleged a violation of various anti-discrimination provisions of the Act. The charge does not set forth any specific acts of discrimination, but rather it alleges that petitioners have "historically" restricted union membership of minority journeymen and minority apprentices because of their race.[1] Such a charge is commonly known as a "patterns charge".

Based on the above charge, EEOC served a "Demand for Access to Evidence" (hereafter referred to as Demand for Access) upon petitioners, pursuant to 42 U.S.C. § 2000e–9. The evidence demanded spans the period from May 1, 1962 to the present, and it is set out in the accompanying footnote.[2]

1. The charge stated in part:
   I have reasonable cause to believe that the [petitioners] * * * have violated Title VII, Sections 703(c) [42 U.S.C. 2000e–2(c)], 704(a) [42 U.S.C. 2000e–3(a)], and 703(d) [42 U.S.C. 2000e–2(d)] of the Civil Rights Act of 1964, and are within the jurisdiction of the Equal Employment Opportunity Commission. The following practices have occurred:
   1. That the [petitioners], their officers and agents, have historically, and subsequent to the effective date of Title VII * * *, discriminatorily restricted union membership of minority group members because of race or national origin.
   2. That the [petitioners] * * * have historically, and subsequent to the effective date of Title VII * * *, discriminatorily restrict- the participation of minority group members because of race or national origin in their apprenticeship programs.

2. 1. A list of names, addresses, and telephone numbers of all persons who have been referred to, or who have applied to Local 104 for testing and certification of qualifications to perform work within the jurisdiction of the local and all records pertaining to these persons.
   2. A list of names, addresses and telephone numbers of all persons who have been tested for qualifications to perform said work, together with copies of tests and scores, any records, etc.
   3. A list of names, addresses and telephone numbers of those persons who are rated as "passed" and a separate list of those rated as "failed to pass" of tests referred to above.

Pursuant to 42 U.S.C. § 2000e–9(c), petitioners now seek an order from this court to set aside or modify the Demand for Access.

■ Petitioners' initial contention is that Congress in drafting section 2000e–5(a) did not intend to grant to a commissioner the power to issue a patterns charge. After availing itself of the useful guidance of counsel for all parties in this case, the court has determined that section 2000e–5(a) was intended to allow a commissioner to file a patterns charge, with a consequent investigation by EEOC. In the Senate debates on what is now section 2000e–5(a), Senator Ervin offered an amendment which would have eliminated the EEOC's power to investigate union or employer discrimination upon the initiative of a commissioner. When they spoke in opposition to this amendment, several Senators also stressed that one purpose of section 2000e–5(a) was to allow a commissioner to make a patterns discrimination charge followed by EEOC investigation. These assertions were not contested by either proponents or opponents of the Ervin amendment, which was subsequently defeated. See 110 Cong.Rec. 14186–14192 (remarks of Senators Pastore and Javits).

■ The petitioners next assert that the writing which must accompany a commissioner's charge under section 2000e–5(a), to indicate the basis of his "reasonable cause" belief, was intended by Congress to be more specific than the writing involved here.[3] But to require such specificity might seriously cripple the effectiveness of Title VII of the Act. The provision in section 2000e–5(a) for triggering the investigative process upon the initiative of a commissioner was inserted at least partly because of a belief that individuals would often be deterred from making formal complaints to EEOC

4. A list of names, addresses and phone numbers of applicants for membership together with copies of their applications and any records, correspondence, etc.

5. A list of names, addresses and phone numbers of applicants for membership together with copies of their applications and any records, correspondence, etc.

6. A list of names, addresses and phone numbers of all members of Local 104, with their racial, ethnic, nationality or ancestry identification.

7. Dispatch records, classification of members dispatched, together with an indication as to whether membership in Local 104, transferee from another local, traveller, non-member and/or from what area or local the worker came.

8. A breakdown and description of all pension and welfare records maintained by or in the possession or control of the respondent for the period of time previously indicated.

9. A description of all records not heretofore noted maintained by or in the possession or control of respondent for the period of time previously indicated.

10. A list of names, addresses, and telephone numbers, of those persons to whom work permits were issued, if any, together with dates of issuance and identification of permit-holder as to color, race, national origin or ancestry.

11. A list of names, addresses and telephone numbers of all officers, committee members and other officials, either elected, appointed, or hired, together with a copy of the Local's constitution, By-laws, Rules and Regulations, "any and all" meetings of the membership, the Executive Board and the membership committee, if any.

12. Out-of-work lists for all groups and classifications for the period May 1, 1962, to present.

13. Work cards for all groups and classifications for the period May 1, 1962, to present.

14. List of apprentices and applicants for entry into the apprenticeship program, with their names, addresses, telephone numbers, completed application forms, copies of tests given, test scores, guidelines of types of questions presented in any oral examination and relative weight given each examination in the selection process.

15. Two copies of each of the following in effect at any time during the period May 1, 1962, to present:
   1. Constitution and By-Laws
   2. Master Agreement
   3. Hiring Regulations
   4. Standards and procedures for administration of the apprenticeship program

3. See note 2, *supra.*

because of fear of retaliation by the party charged with discriminating. See 110 Cong.Rec. 14188, 14191 (remarks of Senators Case and Keating). Yet if the commissioner's charge had to allege specific facts, it would reveal his sources of information, and the problem which Congress sought to forestall would still exist. Then too, it should be noted that federal courts have applied much less stringent standards toward pleadings in the administrative process than they would in other types of litigation, since the function of administrative pleading is merely "to set in motion the machinery of an inquiry", N.L.R.B. v. Fant Milling Company, 360 U.S. 301, 307, 79 S.Ct. 1179, 3 L.Ed.2d 1243, and is only one of several means by which the administrative process affords "an opportunity to prepare * * *." 1 Davis, Administrative Law Treatise, 525.

Petitioners contend that if a patterns charge is not required to be more specific than is the one here, then petitioners are deprived of any meaningful right under section 2000e–9(c) to contest the evidentiary requests in the ensuing Demand for Access as being irrelevant to the charge. However, this court has experienced no difficulty in the present case in evaluating the relevancy of the various requests in the Demand for Access, and this experience counsels against accepting petitioners' fears as a matter of general validity.

■ Petitioners have challenged several specific requests in the Demand for Access, and we turn now to these. Petitioners first contend that access should be limited to records which date subsequent to the passage of the 1964 Civil Rights Act, since that act imposed dramatically new standards of conduct upon unions and employers, and therefore the relevant "pattern" should be in conformity with the dictates of the Act after it became law. This argument is persuasive, especially in view of the fact that Congress delayed the effective date of the Act for one year, thereby affording a "grace period" during which employers and unions could eliminate any practices which offended the Act.[4] The Demand for Access will therefore be limited to records which date subsequent to the passage of the Act.

Petitioners also contend that the provision in Title VII regarding EEOC investigations, 42 U.S.C. § 2000e–8(a),[5] do not give EEOC the power to require the party investigated to compile lists of information simply for the purposes of the investigation. Neither section 2000e–8 (a) or 2000e–9(a) ("[T]he Commission shall have authority * * * to require the production of documentary evidence * * *.") serve to resolve this question by themselves, and it is therefore necessary to ask whether any such requests in the Demand for Access comply with " * * * limitations generally applicable to compulsory process * * *.", which is one of the grounds by which a party may challenge an EEOC investigation under section 2000e–9(c). Moore indicates that in general federal courts do not regard it as a sufficient objection that an interrogatory requires a party to make research or compile data. 4 Moore, Federal Practice, p. 2271. Rather, the courts "weigh the annoyance and expense involved against the value of the information sought". Id at 2368. We are unable to determine at present what, if any, data would have to be freshly compiled by petitioners in order to comply with the Demand for Access. Should it turn out that any such compilation would be unduly burdensome and unjustified in

4. See 110 Cong.Rec. 6565 (remarks of Senator Kuchel).

5. Section 2000e–8(a) provides:
    (a) In connection with any investigation of a charge filed under section 2000e–5 of this title, the Commission * * * shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.

proportion to its relevance, petitioners could raise this point in defense to a petition by EEOC under section 2000e–9(b) for a district court order enforcing the information requests, since the point has been raised in the petition.[6]

■ Petitioners contest the relevancy of request number 8 in the Demand for Access, which calls for Local 104 to provide a "breakdown and description" of its pension and welfare records. Counsel for EEOC has informed the court that EEOC finds such records useful because they usually furnish the most accurate information on membership in a union. Request number 8 will therefore be upheld, but EEOC will be limited to the scope of the commissioner's charges in its use of the information.

■ Similarly, the request numbered 9 ("A description of all records not heretofore noted maintained by or in the possession or control of [petitioners]"), which petitioners contend is too vague, will be upheld but limited to records which are relevant to the commissioner's charges. Where there is reasonable doubt as to relevancy, it is anticipated that the problem can be worked out informally between the parties, and it is certainly not intended that petitioners be subjected to the risk of a contempt citation for failure to follow request number 9 in areas where there would be reasonable doubt as to relevancy.

■ EEOC omitted certain words in its request number 11, set out in footnote 3, *supra*. It is apparent that the third to the last phrase should read " * * * and *the minutes of* any *and* all meetings of the membership, the Executive Board and the membership committee, if any." (the italicized words are the ones omitted). As so interpreted, request number 11 will be enforced in its entirety.

It is ordered that petitioners comply with respondent's Demand for Access to Information in accordance with the above conclusions.

---

6. Note the requirement in section 2000e–9 (c) that "No objection which is not raised by such a petition may be urged in the defense to a proceeding initiated by the Commission * * * for enforcement of such a demand * * *."